[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 11-15149 & 12-10293
_____

D.C. Docket Nos. 2:11-cv-14115-FJL,
2:04-cr-14032-KMM-1

JAMES JOSEPH BROWN,

Petitioner - Appellant,

versus

UNITED STATES OF AMERICA,

Respondent - Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(April 7, 2014)

Before TJOFLAT and PRYOR, Circuit Judges, and ROTHSTEIN,[*] District Judge.

TJOFLAT, Circuit Judge:

_____

[*] The Honorable Barbara J. Rothstein, United States District Judge for the Western District of Washington, sitting by designation.

The Federal Magistrate Act of 1979, Pub. L. No. 96-82, 93 Stat. 643, authorizes a magistrate judge, with the consent of the parties, to "conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case." Id. § 2, 93 Stat. at 643 (codified as amended at 28 U.S.C. § 636(c) (2006)). In Appeal No. 12-10293, which must be decided before we reach Appeal No. 11-15149, the question presented is whether the consensual delegation of a motion to vacate sentence under 28 U.S.C. § 2255 (Supp. I 2009)[1] to a magistrate judge for final disposition pursuant to 28 U.S.C. § 636(c)[2] violates Article III of the Constitution. However, we need not decide whether that delegation would violate Article III because we hold that that a § 2255 proceeding is not a "civil matter" for

---

[1] 28 U.S.C. § 2255 provides, in relevant part:

(a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

[2] 28 U.S.C. § 636(c) provides, in relevant part:

Notwithstanding any provision of law to the contrary—

(1) Upon the consent of the parties, a full-time United States magistrate judge or a part-time United States magistrate judge who serves as a full-time judicial officer may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves.

purposes of § 636(c), and therefore the Magistrate Judge lacked the statutory authority to enter final judgment on Brown's § 2255 motion.

This opinion proceeds in four parts. Part I sets out the circumstances giving rise to the appeals before us. In part II, we recount the history of the magistrate system to provide context to part III's analysis of the question Appeal No. 12-10293 presents. A brief conclusion follows in part IV.

I.

James Joseph Brown, the appellant, stands convicted of using a computer and America Online to knowingly persuade, induce, entice and coerce an individual who had not attained the age of eighteen years, to engage in sexual activity under circumstances as would constitute a criminal offense, and attempted to do so, in violation of 18 U.S.C. § 2422(b) (Supp. III 2005). As a career offender,[3] he is serving a prison sentence of 235 months.[4] On March 24, 2011,

_____

[3] Under the United States Sentencing Guidelines,

[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S. Sentencing Guidelines Manual § 4B1.1(a) (2013). The term "crime of violence" is defined U.S.S.G. § 4B1.2 and is nearly identical to the definition of the term "violent felony" in the Armed Career Criminal Act (the "ACCA"), 18 U.S.C. § 924(e). See United States v. Taylor, 489 F.3d 1112, 1113 (11th Cir. 2007) ("[O]ur cases interpreting 'crime of violence' under

3

Brown moved the District Court to vacate his conviction and sentence under 28

U.S.C. § 2255.[5] Five days later, the court ordered the parties to file a joint

statement as to whether they would consent to the Magistrate Judge conducting all

proceedings in the case pursuant to 28 U.S.C. § 636(c). On April 12, 2011, Brown

and the Government filed a joint statement consenting to the Magistrate Judge's

jurisdiction. On April 13, the District Court entered an order referring the case to

the Magistrate Judge "to take all necessary and proper action as required by law,

including, if necessary, the conduct of a jury or nonjury trial, and final judgment."

§ 4B1.2 provide important guidance in determining what is a 'violent felony' under the ACCA because the definitions for both terms are virtually identical.") (internal quotation marks omitted).

Persons who qualify as career offenders are subject to a sentencing enhancement, which is laid out in U.S.S.G. § 4B1.1(b). In this case, because Brown was sentenced as a career offender, his total offense level increased from 22 to 31 and his criminal history category increased from III to VI.

[4] On appeal, we affirmed Brown's conviction and sentence, but the Supreme Court vacated our decision and remanded the case for reconsideration in light of an intervening Supreme Court holding. See Brown v. United States, 526 F.3d 691 (11th Cir. 2008) ("Brown I"), vacated, 556 U.S. 1150, 129 S. Ct. 1668 (2009). On remand, we again affirmed Brown's conviction and sentence. See Brown v. United States, 329 F. App'x 253 (11th Cir. 2010) ("Brown II").

[5] Brown claimed that he was wrongfully sentenced as a career offender because his conviction under 18 U.S.C. § 2422(b) was not a crime of violence in light of intervening Supreme Court and Eleventh Circuit case law, which, Brown argues, has abrogated the precedent on which the probation officer and District Court relied to establish that Brown is a career offender. Brown also claimed that his plea of guilty to the offense was induced by the Government's misrepresentation, and his attorney's assurance based on that misrepresentation, that he would not be sentenced as a career offender. Finally, Brown claimed that his plea was not knowing and voluntary because he was under the influence of antipsychotic medication, even though he did not meet the diagnostic criteria for a psychotic disorder, and thus did not understand the consequences and the significance of pleading guilty.

4

In other words, the District Court and the parties treated Brown's § 2255 motion as a civil matter that could be tried by the Magistrate Judge with the District Court's approval and the parties' consent.

On July 15, 2011, the Magistrate Judge, without an evidentiary hearing, entered an order denying Brown's § 2255 motion on the ground that the motion failed to state a basis for granting relief; he also denied Brown's motion for reconsideration.[6] Brown timely appealed both rulings, Appeal No. 11-15149.

On November 28, 2011, Brown, citing the Fifth Circuit's decision in United States v. Johnston, 258 F.3d 361 (5th Cir. 2001), which held that "the consensual delegation of § 2255 motions to magistrate judges violates Article III of the Constitution," id. at 372, moved the Magistrate Judge, pursuant to Federal Rule of Civil Procedure 60(b)(4), to vacate as void his order denying Brown's § 2255 motion. In Johnston, the Fifth Circuit concluded that § 2255 is a civil matter for purposes of § 636(c), which necessitated the determination of whether delegating a § 2255 motion to a magistrate judge violates Article III. 258 F.3d at 363–672.[7]

---

[6] Brown filed the motion for reconsideration pursuant to Federal Rules of Civil Procedure 52(b) and 59(e).

[7] The Fifth Circuit concluded that allowing a magistrate judge to enter final judgment on a § 2255 motion violates Article III in three ways. First, "[i]f the parties to a § 2255 motion consent to proceed before a magistrate judge, that magistrate judge could attack the validity of an Article III judge's rulings. Such an act clearly raises Article III concerns because judges without lifetime tenure and undiminishable compensation would have controlling authority." United

The Government responded to Brown's Rule 60(b)(4) motion with a statement requesting the Magistrate Judge to consider the merits of Brown's motion. The Magistrate Judge denied the motion, citing a lack of controlling Eleventh Circuit precedent and the fact that his decision on the merits of Brown's § 2255 motion was pending appeal. Implicitly, the Magistrate Judge's denial was a statement that the District Court's reference of the § 2255 motion for final judgment was not in error—i.e., that a § 2255 proceeding is a civil matter and that a magistrate judge's entry of final judgment disposing of the litigation does not violate Article III. Nevertheless, the Magistrate Judge issued a certificate of appealability on the question:

> Whether consensual delegation of a motion to vacate sentence under 28 U.S.C. § 2255 to a United States Magistrate Judge for final disposition pursuant to 28 U.S.C. § 636(c) violates Article III of the Constitution?

This constitutional question is before us in Brown's second appeal, Appeal No. 12-10293.

---

States v. Johnston, 258 F.3d 361, 369 (5th Cir. 2001). Second, "the notion that a § 2255 proceeding is a further step in the movant's criminal case, means that the consensual delegation of such a proceeding may unwittingly embroil a magistrate judge in the unconstitutional conduct of a felony trial." Id. at 369–70. Finally, "the consensual delegation of § 2255 proceedings under § 636(c) presents reviewability problems severe enough to create the impression that magistrate judges are not adjuncts, but are independent of Article III control." Id. at 370. In light of our statutory holding, infra part III, we need not resolve whether the Fifth Circuit's analysis is correct.

6

Whether we reach the merits of Brown's first appeal depends on the outcome of this second appeal. In addressing the second appeal, "[w]e are mindful of the doctrine that a federal court should not pass on federal constitutional issues unless necessary to its decision." Bickerstaff Clay Prods. Co. v. Harris Cnty., Ga., 89 F.3d 1481, 1486 n.9 (11th Cir. 1996) (citing Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 347, 56 S. Ct. 466, 483, 80 L. Ed. 688 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of.")); see also Spector Motor Serv., Inc. v. McLaughlin, 323 U.S. 101, 105, 65 S. Ct. 152, 154, 89 L. Ed. 101 (1944) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable."). Therefore, before deciding whether Article III prohibited the Magistrate Judge from entering final judgment on Brown's § 2255 motion, we must consider whether 28 U.S.C. § 636(c) permits a magistrate judge to enter judgment in the first instance. As we conclude in part III, infra, it does not.

## II.

To provide context for our analysis of the issues presented by Brown's appeals, we first describe the creation and development of the magistrate system.

This part is divided into five subparts: subpart A recounts the history of the precursor to the magistrate system—the commissioner system; subpart B details the 1968 Federal Magistrates Act; subpart C describes the Supreme Court's decision in Wingo v. Wedding, 418 U.S. 461, 94 S. Ct. 2842, 41 L. Ed. 2d 879 (1974), which curtailed the use of magistrates, as well as Congress's response to the Wingo decision; subpart D outlines the Federal Magistrate Act of 1979 and the ancillary changes Congress has made to the magistrate system since that statute's enactment; finally, subpart E synthesizes the previous subparts to describe the Article I power Congress exercised in establishing the magistrate system.

## A.

Beginning with the Judiciary Act of 1793, ch. 22, § 4, 1 Stat. 333, 334, Congress granted circuit court judges[8] the power to authorize "one or more discreet persons learned in the law" to admit arrestees to bail in any federal criminal case,

---

[8] The Judiciary Act of 1789, ch. 20, § 4, 1 Stat. 73, 74–75, created the circuit courts, which consisted of two Supreme Court Justices and one district court judge. The circuit courts were courts of original and appellate jurisdiction, having original jurisdiction over most federal criminal cases. Id. § 11, 1 Stat. at 78–79. Although the 1789 Judiciary Act purported to give circuit and district courts exclusive jurisdiction over federal criminal cases, Congress subsequently vested jurisdiction over certain criminal cases in both the federal and state courts. See generally, Charles Warren, Federal Criminal Laws and the State Courts, 38 Harv. L. Rev. 545 (1925) (outlining the development of Congress's actions regarding the vesting of jurisdiction over federal criminal law).

with the exception of capital cases.[9]  In 1812, Congress provided circuit courts with authority to allow such "discreet persons" to take affidavits in civil cases and to receive fees for such services.  Act of Feb. 20, 1812, ch. 25, §§ 1–2, 2 Stat. 679, 679–82.  In 1817, the "discreet persons" were given the title commissioner of the circuit court and the authority to take depositions in civil cases.  Act of Mar. 1, 1817, ch. 30, 3 Stat. 350, 350.

Over the next seventy years, Congress expanded the commissioners' authority to include "all the powers that any justice of the peace, or other magistrate, of any of the United States may now exercise in respect to offenders for any crime or offense against the United States, by arresting, imprisoning, and bailing the same,"[10] certain proceedings in admiralty,[11] in bankruptcy,[12] and in civil rights,[13] as well as other case matters.[14]

---

[9] Presumably, Congress used the term "discreet" in the sense of a prudent person, similar to the definition we use today.  See, e.g., Webster's New World Dictionary 392 (3d college ed. 1988) (defining "discreet" as "careful about what one says or does; prudent; esp. keeping silent or preserving confidences when necessary"); 3 A New English Dictionary on Historical Principles 433 (James A.H. Murray ed. 1897) (defining "discreet" as "[s]howing discernment or judgment in the guidance of one's own speech and action ; judicious, prudent, circumspect, cautious").  These "discreet persons" were similar to the British system's justices of the peace, who had been authorized since 1383 to take testimony and decide guilt for certain misdemeanors.  See United States v. Gecas, 120 F.3d 1419, 1442 (11th Cir. 1997) (en banc).  Many of the powers granted to the discreet persons were similar to those previously granted to the justices of the peace under British law.  See id. at 1442–43 (recounting the development of the British justice of the peace system in the context of the privilege against compelled testimony).

[10] Act of Aug. 23, 1842, ch. 188, § 1, 5 Stat. 516, 517.

9

In 1891, Congress established the courts of appeals, Act of Mar. 3, 1891, ch. 517, § 2, 26 Stat. 826, 826–27, and soon thereafter abolished the circuit courts' commissioners, replacing them with United States Commissioners, who were appointed by the district courts, Act of May 28, 1896, ch. 252, § 19, 29 Stat. 140, 184. These commissioners, like the circuit court commissioners, were paid according to a fee schedule and performed the same duties those commissioners had performed, but they served a limited term of four years and were prohibited from holding other federal positions, civil or military. Id. §§ 19–20, 29 Stat. at 184. These commissioners were not Article III judges—they lacked life tenure and

---

[11] See, e.g., Act of June 11, 1864, ch. 116, § 2, 13 Stat. 121, 121–22 (giving commissioners the power to issue arrest warrants for seamen who were under the exclusive jurisdiction of foreign consuls and to examine such seamen to determine whether they were U.S. citizens); Act of Aug. 8, 1846, ch. 105, 9 Stat. 78, 78–79 (authorizing commissioners to carry into effect certain awards of foreign consuls arising from disputes between captains and crews of vessels); Act of Aug. 23, 1842, ch. 188, § 2, 5 Stat. 516, 517 (giving commissioners the authority to summon masters of vessels to show cause for nonpayment of seamen's wages).

[12] See, e.g., Bankruptcy Act of 1867, ch. 176, § 22, 14 Stat. 517, 527 (authorizing commissioners to take proof of debts in bankruptcy proceedings); id. § 38, 14 Stat. at 535–36 (giving commissioners the power to take evidence in bankruptcy proceedings).

[13] See, e.g., Civil Rights Act of 1866, ch. 31, §§ 4–5, 14 Stat. 27, 28 (authorizing commissioners to issue process and warrants to enforce the Civil Rights Act of 1866 and to appoint persons to execute said process).

[14] See, e.g., Act of June 1, 1872, ch. 255, § 14, 17 Stat. 196, 198–99 (granting commissioners the authority to discharge poor convicts who had been imprisoned due to their inability to pay a criminal fine); Act of May 15, 1862, ch. 71, § 8, 12 Stat. 386, 387 (authorizing commissioners "to take surety of the peace and for good behavior" by ordering the arrestees be detained pending trial); Act of Sept. 16, 1850, ch. 52, § 2, 9 Stat. 458, 458 (giving commissioners the power to administer oaths and take acknowledgments).

undiminishable salaries—and thus could not exercise the "judicial Power" of Article III.

Around the turn of the twentieth century, Congress began to expand the commissioners' jurisdiction over petty offenses. At first, commissioners were authorized to hear and determine certain minor offenses in specific federal areas, such as territories,[15] federal highways,[16] and national parks.[17] Then in 1940, Congress granted commissioners jurisdiction to try and sentence persons charged with petty offenses "in any place over which the Congress has exclusive power to legislate or over which the United States has concurrent jurisdiction." Act of Oct. 9, 1940, ch. 785, § 1, 54 Stat. 1058, 1058–59.[18] Persons charged with petty offenses could elect to be tried in district court, and commissioners were obligated to inform defendants of that right. Id.[19] The commissioner system remained largely unchanged for another quarter century.

---

[15] E.g., Act of Mar. 1, 1895, ch. 145, § 4, 28 Stat. 693, 695–96 (Indian Territory).

[16] E.g., Act of Sept. 1, 1916, ch. 433, 39 Stat. 676, 693 (Conduit Road—now MacArthur Boulevard—in Maryland and Washington, D.C.).

[17] E.g., Act of May 7, 1894, ch. 72, § 5, 28 Stat. 73, 74–75 (Yellowstone National Park).

[18] A petty offense was defined as any offense "the penalty for which does not exceed confinement in a common jail, without hard labor for a period of six months, or a fine of not more than $500, or both." Act of Dec. 16, 1930, ch. 15, 46 Stat. 1029, 1029–30.

[19] There may have been a due process problem with allowing commissioners—who were paid a fee for each matter they heard—to try petty offenses. In Tumey v. Ohio, 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749 (1927), the Supreme Court held that a magistrate who is paid a fee for

B.

In 1968, Congress passed the Federal Magistrates Act, Pub. L. No. 90-578, 82 Stat. 1107 (1968), which eliminated the Office of the United States Commissioner and created the Office of the United States Magistrate. The Act vested appointment power in the district courts and established minimum qualifications for magistrates,[20] which included bar membership. Id. § 101, 82 Stat. at 1108–09 (codified as amended at 28 U.S.C. § 631 (2006 & Supp. IV 2011)). Unlike Article III judges—who enjoy life tenure and removal only by impeachment—magistrates would serve terms of eight years, would be subject to mandatory retirement at age seventy, and could be removed for cause by the judges of the district court during the magistrate's tenure. Id. § 101, 82 Stat. at 1109. In other words, magistrates were not Article III judges.

---

each warrant issued "certainly violates the Fourteenth Amendment and deprives a defendant in a criminal case of due process of law" because such an arrangement "subject[s] his liberty or property to the judgment of a court, the judge of which has a direct, personal, substantial pecuniary interest in reaching a conclusion against him in his case." Id. at 523, 47 S. Ct. at 441. Although commissioners were not paid for each guilty verdict handed down, there might still have been an incentive to try as many cases as possible—regardless of the merits of the case—in order to receive the fee. As Congress noted in its report on the bill that would become the Federal Magistrates Act, "[t]he present method of compensating commissioners probably runs afoul of the Tumey rule." H.R. Rep. No. 90-1629, at 13 (1968), reprinted in 1968 U.S.C.C.A.N. 4252, 4256.

[20] It was not until 1990—when Congress enacted the Judicial Improvements Act of 1990, Pub. L. No. 101-650, § 321, 104 Stat. 5089, 5117—that the title of magistrate was changed to magistrate judge.

Magistrates retained the powers the commissioners had exercised, and the district courts were authorized to give magistrates the power to serve as special masters in civil cases, to assist in pretrial or discovery proceedings, and to conduct a preliminary review of an application for post-trial relief and submit a report and recommendation thereon to facilitate the decision of the district court. Id. § 101, 82 Stat. at 1113 (codified as amended at 28 U.S.C. § 636(a)–(b) (2006 & Supp. III 2010)). Recognizing that district courts could innovate the way in which magistrates were utilized, Congress also authorized district courts to establish rules giving magistrates "such additional duties as are not inconsistent with the Constitution and laws of the United States." Id. (codified as amended at 28 U.S.C. § 636(b) (2006 & Supp. III 2010)).

Magistrates could also try and sentence persons accused of "minor offenses."[21] Id. § 302, 82 Stat. at 1115–16 (codified as amended at 18 U.S.C. § 3401 (2012)). Before a magistrate could try a minor offense, however, the district court had to specially designate the magistrate to do so, and, as was the case under the commissioner system, the magistrate had to "carefully explain to the defendant that he has a right to trial before a judge of the district court." Id.

---

[21] "Minor offenses" were defined as "misdemeanors . . . the penalty for which does not exceed imprisonment for a period of one year, or a fine of not more than $1,000, or both." Federal Magistrates Act, Pub. L. No. 90-578, § 302, 82 Stat. 1107, 1116 (1968).

Before Congress enacted the 1968 Act, it specifically considered the constitutionality of expanding the magistrate's jurisdiction over minor offenses, concluding that "the heavy weight of authority supported the constitutionality of the minor offense provisions."  H.R. Rep. No. 90-1629, at 21 (1968), reprinted in 1968 U.S.C.C.A.N. 4252, 4264.  In reaching that conclusion, the House Committee on the Judiciary was also "especially cognizant of the fact that the magistrate is an officer of the U.S. district court, is appointed by the article III judges of the court and subject at all times to the directions and control of the judges."  Id.[22]  The Senate Report identified "three separate lines of authority" for the proposition that magistrates could constitutionally try minor offenses.  First, "the magistrate is an officer of the U.S. district court, appointed by that court and at all times subject to its direction and control."  S. Rep. No. 90-371, at 31 (1968).  Second, the Government and the defendant were required to consent to trial before the magistrate.  Id.  And third, the defendant could appeal to a district court, similar to an appeal from an administrative court.  Id.

---

[22] However, "[s]ince magistrate judges are not Article III judges, it is uncertain whether Congress may use Article I to confer judicial power on them even over very minor federal crimes." 13 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3528 (3d ed. 2008).  To our knowledge, no court has directly addressed or resolved this issue.

## C.

After Congress enacted the Federal Magistrates Act, the district courts began to grant magistrates "such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b) (1972). One such district court enacted a local rule authorizing magistrates to conduct evidentiary hearings in habeas corpus proceedings, a duty not expressly authorized in the 1968 Act. Then, a petitioner who had filed a habeas corpus petition under 28 U.S.C. § 2254 and whose petition had been referred to a magistrate for an evidentiary hearing challenged this rule as beyond the authority of the magistrate. After the Sixth Circuit overturned the local rule, the Supreme Court considered, in Wingo v. Wedding, 418 U.S. 461, 94 S. Ct. 2842, 41 L. Ed. 2d 879 (1974), whether the local rule imposed an additional duty that was inconsistent with the laws of the United States within the meaning of § 636(b) or whether § 636(b) itself precluded district courts from assigning such a duty to magistrates. Id. at 465, 94 S. Ct. at 2845.

The Court began its analysis by noting that that the habeas corpus statute requires that "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." Id. at 468, 94 S. Ct. at 2847 (quoting 28 U.S.C. § 2243) (alteration in original). Then, relying on Holiday v. Johnston, 313 U.S. 342, 61 S. Ct. 1015, 85 L. Ed. 1392 (1941), which held that, under the predecessor to § 2243, a commissioner was not authorized to conduct evidentiary

15

hearings in habeas proceedings and make findings of fact, the Court concluded that "[a] federal judge on habeas corpus application is required to summarily hear and determine the facts." Wingo, 418 U.S. 469, 94 S. Ct. at 2848 (quoting Brown v. Allen, 344 U.S. 443, 462, 73 S. Ct. 397, 410, 97 L. Ed. 469 (U.S. 1953)) (internal quotation marks omitted).

The Court then narrowed its inquiry to "whether the Federal Magistrates Act changed the requirement of § 2243 that federal judges personally conduct habeas corpus evidentiary hearings." Id. As the Court determined, "nothing in the text or legislative history of the Magistrates Act suggests that Congress meant to change that requirement." Id. at 469–70, 94 S. Ct. at 2848. According to the Court, although Congress granted district courts the authority to give magistrates additional duties, it had "carefully circumscribed the permissible scope of assignment to only 'such additional duties as are not inconsistent with the Constitution and laws of the United States.'" Id. at 470, 94 S. Ct. at 2848(quoting 28 U.S.C. § 636(b)) (emphasis omitted). Because § 2243 requires that a district judge hear and determine the facts in habeas cases, the Court struck down the local

rule because it imposed an additional duty on magistrates that was inconsistent with the laws of the United States. Id. at 472, 94 S. Ct. at 2849.[23]

Following Wingo—and courts of appeals cases that had restricted the use of magistrates—Congress enacted a statute in 1976 to clarify the role of magistrates in the federal judicial system. See H.R. Rep. No. 94-1609, at 7–8 (1976), reprinted in 1976 U.S.C.C.A.N. 6162, 6167–68 ("[T]he committee has concluded that the enactment of [the 1976 Act] will further improve the judicial system by clearly

[23] The Court also relied on a provision of § 636(b)—since repealed by amendment— which authorized district courts to allow magistrates to conduct "preliminary review of applications for posttrial relief made by individuals convicted of criminal offenses, and submit[t] of a report and recommendations to facilitate the decision of the district judge . . . as to whether there should be a hearing." Wingo v. Wedding, 418 U.S. 461, 470, 94 S. Ct. 2842, 2848, 41 L. Ed. 2d 879 (1974) (quoting 28 U.S.C. § 636(b)(3) (1972)) (emphasis in original). A majority of the Court read this provision as precluding district courts from assigning magistrates the duty of conducting evidentiary hearings. Id. at 472, 94 S. Ct. at 2849. This reasoning appears to be based on the lower court's decision in the case, in which the Sixth Circuit determined that under the canon of ejusdem genereis—which presumes "a general provision of a statute will be controlled and limited by subsequent statutory language more specific in scope"—the provision authorizing magistrates to determine whether there should be a hearing in a habeas case was the exclusive power granted to magistrates in that area. Wedding v. Wingo, 483 F.2d 1131, 1135 (6th Cir. 1973) aff'd, 418 U.S. 461, 94 S. Ct. 2842, 41 L. Ed. 2d 879 (1974).

Six years after Wingo, the Court described its holding in that case as follows: "Wingo held that as a matter of statutory construction, the 1968 Magistrates Act did not authorize magistrates to hold evidentiary hearings in federal habeas corpus cases." United States v. Raddatz, 447 U.S. 667, 674, 100 S. Ct. 2406, 2411, 65 L. Ed. 2d 424 (1980); see also Thomas v. Arn, 474 U.S. 140, 152 n.12, 106 S. Ct. 466, 473 n.12, 88 L. Ed. 2d 435 (1985) ("[Wingo] held that Congress had not intended, in enacting the Federal Magistrates Act in 1968, to permit a magistrate to conduct an evidentiary hearing on a habeas corpus petition."). The Court subsequently interpreted the "additional duties" provision as authorizing magistrates to conduct voir dire in felony trials, provided the parties consent. See generally Peretz v. United States, 501 U.S. 923, 111 S. Ct. 2661, 115 L. Ed. 2d 808 (1991).

17

defining the additional duties which a judge of the district court may assign to a magistrate . . . ."). The 1976 Act amended § 636(b) in its entirety to read:

> (b)(1) Notwithstanding any provision of law to the contrary—
>
> > (A) a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except [for those listed in this section[24]]. . . .
> >
> > (B) a judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.

Act of Oct. 21, 1976, Pub. L. No. 94-577, § 1, 90 Stat. 2729, 2729 (codified as amended at 28 U.S.C. § 636(b)).[25] The 1976 Act retained the "additional duties" provision considered in Wingo, but Congress moved the provision to a separate subsection to "emphasize[] that it is not restricted in any way by any other specific

---

[24] Magistrate judges are not authorized to hear and determine pretrial "motion[s] for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action." 28 U.S.C. § 636(b)(1)(A).

[25] The 1976 Act also amended the Rules Governing Section 2254 Proceedings for the United States District Courts [hereinafter Section 2254 Rules] and the Rules Governing Section 2255 Proceedings for the United States District Courts [hereinafter Section 2255 Rules] to make clear that magistrates were permitted to conduct evidentiary hearings as part of postconviction proceedings and to submit to the district court proposed findings and recommendations for disposition. Act of Oct. 21, 1976, § 2, 90 Stat. at 2730.

grant of authority to magistrates." H.R. Rep. No. 94-1609, at 12, <u>reprinted in</u> 1976 U.S.C.C.A.N. at 6172.

When a magistrate heard and determined a matter pursuant to § 636(b)(1)(A), the district court was authorized to "reconsider any pretrial matter . . . where it ha[d] been shown that the magistrate's order [was] clearly erroneous or contrary to law." Act of Oct. 21, 1976, § 1, 90 Stat. at 2729. When a magistrate issued a report and recommendation, the district court was required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection [was] made." <u>Id.</u> Additionally, judges could receive further evidence, recommit the matter to the magistrate with further instructions, or accept, reject, or modify the magistrate's findings and recommendations. <u>Id.</u>

The House Report and congressional debates made clear that the 1976 Act was intended to "supply the congressional intent found wanting by the Supreme Court in <u>Wingo v. Wedding</u>." 122 Cong. Rec. 35,181 (1976) (statement of Rep. Danielson). According to the House Report on the 1976 Act, the language "notwithstanding any provision of law to the contrary" was

> intended to overcome any problem which may be caused by the fact that scattered throughout the code are statutes which refer to "the judge" or "the court". It is not feasible for the Congress to change each of those terms to read "the judge or a magistrate". It is, therefore, intended that the permissible assignment of additional

19

duties to a magistrate shall be governed by the revised section 636(b), "notwithstanding any provision of law" referring to "judge" or "court".

H.R. Rep. No. 94-1609, at 9, <u>reprinted in</u> 1976 U.S.C.C.A.N. at 6169. Thus, even though § 2243 continued to state that "the court shall . . . hear and determine the facts," 28 U.S.C. § 2243 (1976), Congress was clear that the 1976 Act implicitly amended § 2243 to allow magistrates to conduct evidentiary hearings in habeas corpus cases.

D.

Three years later, Congress passed the Federal Magistrate Act of 1979, Pub. L. No. 96-82, 93 Stat. 643, "to further clarify and expand the jurisdiction of U.S. Magistrates and improve access to the federal courts for the less advantaged." S. Rep. No. 96-74, at 1 (1979), <u>reprinted in</u> 1979 U.S.C.C.A.N. 1469, 1469. Congress sought to achieve this end by inserting a new subsection (c) into 28 U.S.C. § 636, which provides: "Notwithstanding any provision of law to the contrary—Upon the consent of the parties, a [magistrate] may conduct any or all proceedings in a jury or nonjury <u>civil matter</u> and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court." Federal Magistrate Act of 1979 § 2, 93 Stat. at 643 (codified as amended at 28 U.S.C. § 636(c)) (emphasis added). District courts retained some level of review over delegated civil matters under § 636(c). A court could "for good cause shown

20

on its own motion, or under extraordinary circumstances shown by any party, vacate a reference of a civil matter to a magistrate." Id. § 2, 93 Stat. at 644 (codified as amended at 28 U.S.C. § 636(c)(4)). Additionally, the 1979 Act created a right of direct appeal to the courts of appeals, and allowed the parties, in the interest of saving time and money, to appeal to the district court. Id. (codified as amended at 28 U.S.C. § 636(c)(3)).[26]

Congress believed that § 636(c) would both reduce the costs of litigation and "help the system cope and prevent inattention to a mounting queue of civil cases pushed to the back of the docket" as a result of the Speedy Trial Act's requirements for criminal trials. S. Rep. No. 96-74, at 4, reprinted in 1979 U.S.C.C.A.N. at 1472. However, we have not uncovered any indication in the legislative history of the 1979 Act that Congress intended that § 636(c) reach habeas corpus or § 2255 proceedings—or even that it considered that such a situation might occur. Instead, the history expresses concern for the plight of private civil litigants. See, e.g., id. ("The bill recognizes the growing interest in the use of magistrates to improve access to the courts for all groups, especially the less-advantaged. The latter lack the resources to cope with the vicissitudes of

---

[26] Congress subsequently repealed by amendment the provision authorizing parties to appeal to the district court. Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, § 207, 110 Stat. 3847, 3851.

adjudication delay and expense. If their civil cases are forced out of court as a result, they lose all their procedural safeguards."). As it did in 1968, Congress considered the constitutionality of expanding the magistrate's jurisdiction, concluding that "the right to consent to a civil trial before a person other than an Article III judge is long established." H.R. Rep. No. 96-287, at 8 n.20 (1979). Moreover, Congress believed that the consent requirement insulated § 636(c) from any potential Article III problem. See, e.g., id. at 20 (noting that consent, "standing alone, create[s] a solid constitutional basis upon which to construct the proposed legislation.");[27] S. Rep. 96-74, at 4, reprinted in 1979 U.S.C.C.A.N. at 1473 ("In light of this requirement of consent, no witness at the hearings on the bill found any constitutional question that could be raised against the provision.").

Various courts of appeals, prior to 1987, considered whether 28 U.S.C. § 636(c) violated Article III of the Constitution. Those courts determined that because § 636(c) required that the parties and the district court consent to the transfer of a civil matter to the magistrate and because the district court retained some level of control over the magistrate, § 636(c) did not run afoul of Article III. See, e.g., Pacemaker Diagnostic Clinic of Am., Inc. v. Instromedix, Inc., 725 F.2d

---

[27] The House Report also noted that "[j]urisdiction remains in the district court . . . and in all instances an appeal from a magistrate's dream decision lies in an Article III court." H.R. Rep. No. 96-287 at 20. According to the report, either of these reasons also provided a sufficient constitutional basis for a magistrate entering final judgment in civil matters.

22

537, 540–47 (9th Cir. 1984) (en banc) (Kennedy, J.). Finding persuasive the reasoning of the courts of appeals that considered the question, we similarly held that, as a general matter, § 636(c) is constitutional. See Sinclair v. Wainwright, 814 F.2d 1516, 1519 (11th Cir. 1987). Although the Supreme Court has not squarely addressed the question, it has indicated that § 636(c) is constitutional as applied to run-of-the-mill civil cases. See Roell v. Withrow, 538 U.S. 580, 590, 123 S. Ct. 1696, 1703, 155 L. Ed. 2d 775 (2003) (reasoning that a rule allowing for implied consent under § 636(c) is preferable because "[j]udicial efficiency is served; the Article III right is substantially honored.").[28]

In 1996, Congress amended 28 U.S.C. § 636(a) to authorize magistrate judges to try and sentence persons accused of most minor offenses without requiring the consent of the parties. Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, § 202, 110 Stat. 3847, 3848–49. Again, Congress specifically considered the constitutionality of allowing magistrate judges to try minor offenses without requiring the consent of the parties, concluding that

_____

[28] However, all of these cases predate the Supreme Court's decision in Stern v. Marshall, ___ U.S. ___, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011), which declared that a bankruptcy court's judgment of a bankruptcy estate's permissive state-law counterclaim against a creditor who had filed a claim against the estate violates Article III. Id. at ___, 131 S. Ct. at 2608. As described in part III.C., infra, much of the reasoning the Supreme Court used in Stern to invalidate the bankruptcy court's authority would seem to apply with equal force to magistrate judges exercising authority pursuant to § 636(c).

23

defendants charged with petty offenses do not have a constitutional right to be tried before an Article III judge and that there is a long history, dating to the time of ratification, of petty offenses being heard and decided by non-Article III judges. S. Rep. No. 104-366, at 28 (1996), reprinted in 1996 U.S.C.C.A.N. 4202, 4207–08. Finally, in 2000, magistrate judges were authorized to try and enter sentences for any petty offense with or without the parties' consent,[29] and for class A misdemeanors with the parties' consent. Federal Courts Improvement Act of 2000, Pub. L. No. 106-518, § 203, 114 Stat. 2410, 2414.

E.

To summarize the preceding four subparts, magistrate judges (and their predecessors, the commissioners) are not—and have never purported to be— Article III judges. Instead, magistrate judges "draw their authority entirely from an exercise of Congressional power under Article I of the Constitution." Thomas v. Whitworth, 136 F.3d 756, 758 (11th Cir. 1998). Although Congress considered magistrate judges to be "adjunct[s] of the United States District Court, appointed by the court and subject to the court's direction and control," H.R. Rep. No. 96-287, at 8 (1979), the fact is that when magistrate judges exercise their authority to

---

[29] A "petty offense" is defined as "a Class B misdemeanor, a Class C misdemeanor, or an infraction, for which the maximum fine is no greater than" $5,000. 18 U.S.C. § 19 (2012).

try petty offenses and to enter final judgment in civil cases, they are exercising the

essential attributes of "judicial Power." See infra part III. They do not function as

mere adjuncts.[30] They are puisne judges acting as courts. But Article III is clear:

> The judicial Power of the United States, shall be vested in one
> supreme Court, and in such inferior Courts as the Congress may from
> time to time ordain and establish. The Judges, both of the supreme
> and inferior Courts, shall hold their Offices during good Behaviour,
> and shall, at stated Times, receive for their Services, a Compensation,
> which shall not be diminished during their Continuance in Office.

U.S. Const. art. III, § 1. As previously recounted, magistrate judges do not hold

life-tenure, nor is their compensation undiminishable. Therefore, these puisne

judges cannot exercise "the judicial Power of the United States." Thus, a

magistrate judge who exercises final judgment on a § 2255 motion implicates a

potentially serious constitutional problem. With this framework in mind, we now

turn the questions presented by Brown's appeal.

## III.

Before considering the merits of Brown's claims for relief, presented in

Appeal No. 11-15149, we must first address the constitutional question raised by

---

[30] When magistrate judges assist with nondispositive pretrial matters and conduct evidentiary hearings, they are more akin true adjuncts of the district court. In this respect, magistrate judges serve the same role an individual appointed by a district court pursuant to its "inherent power to supply itself with this instrument for the administration of justice when deemed by it essential." In re Peterson, 253 U.S. 300, 312, 40 S. Ct. 543, 547, 64 L. Ed. 919 (1920).

Appeal No. 12-10293. Brown argues that we should adopt the reasoning of <u>United States v. Johnston</u>, 258 F.3d 361 (5th Cir. 2001), and conclude that the Magistrate Judge's final resolution of his § 2255 motion is void under Article III. The Government argues that there is no constitutional problem with permitting a magistrate judge to decide a § 2255 motion, but, contrary to the position it took before the District Court, now says that § 636(c) does not authorize a magistrate judge to exercise such authority. Therefore, before we determine whether a magistrate judge acts in contravention of Article III of the Constitution when entering a final judgment disposing of a § 2255 motion, we must first determine whether § 636(c) authorizes magistrate judges to enter final judgment in the first instance.

Magistrate judges are permitted, with the consent of the parties, to "conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves." 28 U.S.C. § 636(c)(1). The key phrase in the quoted language is "civil matter." Under the plain terms of the statute, if a matter is not a "civil matter" within the meaning of § 636(c), a magistrate judge lacks the

authority to enter final judgment. Unfortunately, the phrase "civil matter" was not defined in the Federal Magistrate Act of 1979, and it remains undefined today.[31]

For the reasons set out below, we conclude that, as a matter of statutory interpretation, a § 2255 motion is not a "civil matter" for purposes of 28 U.S.C. § 636(c). We therefore hold that the Magistrate Judge was without statutory authority to enter a final order on Brown's motion to vacate sentence. In light of our statutory holding, we need not resolve the constitutional question presented in the certificate of appealability.

This part proceeds in three subparts. Subpart A explains why § 2255 motions are most accurately described as civil matters. Subpart B demonstrates that regardless of how § 2255 is characterized, Congress did not evince an intent to allow magistrates to enter final judgment on § 2255 motions. Finally in subpart C, we discuss the constitutional concerns that would be implicated by allowing a magistrate judge to enter final judgment on a § 2255 motion and apply the canon of constitutional avoidance to conclude that a § 2255 proceeding is not a civil matter within the meaning of § 636(c).

---

[31] The congressional reports and floor statements accompanying the 1979 Act use the terms "civil action" and "civil case" to describe what § 636(c) terms a "civil matter," thus suggesting that the phrase is a synonym and does not have some specialized meaning.

A.

Enacted in 1948, § 2255 authorizes federal prisoners to move to vacate their convictions or sentences "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).[32] Congress drafted this section "to meet practical difficulties that had arisen in administering the habeas corpus jurisdiction of the federal courts." United States v. Hayman, 342 U.S. 205, 219, 72 S. Ct. 263, 272, 96 L. Ed. 232 (1952).[33] Although a § 2255 proceeding "is not a habeas corpus proceeding,"

---

[32] This authorization is circumscribed by the provisions of 28 U.S.C. §§ 2244 and 2253.

[33] These practical difficulties arose because, prior to 1948 when Congress enacted § 2255, federal prisoners filed habeas petitions pursuant to 28 U.S.C. § 2241's precursor, 28 U.S.C. § 452 (1946). Federal habeas petitions—like the petitions of state prisoners also filed under § 452—were filed in the district court for the district of confinement, which in the case of federal prisoners often differed from the district of sentencing. See United States v. Hayman, 342 U.S. 205, 213, 72 S. Ct. 263, 269, 96 L. Ed. 232 (1952). As a result, "the few District Courts in whose territorial jurisdiction major federal penal institutions are located were required to handle an inordinate number of habeas corpus actions far from the scene of the facts, the homes of the witnesses and the records of the sentencing court." Id. at 213–14, 72 S. Ct. at 269. Section 2255 motions, by contrast, are filed in the district where the federal prisoner was sentenced, 28 U.S.C. § 2255(a), thus alleviating the burdens that a few select districts shouldered under the previous regime.

Until 1987, federal prisoners had an additional method of obtaining relief from their sentence—Federal Rule of Criminal Procedure 35. When it was promulgated in 1946, Rule 35 provided that a district court judge could "correct an illegal sentence at any time." Fed. R. Crim. P. 35 (1946). Amendments in 1966 and 1979 slightly changed some details of the Rule, but the thrust of the Rule remained largely intact. In many respects § 2255 and Rule 35 overlapped, but

Hayman, 342 U.S. at 220, 72 S. Ct. at 273, it provides federal prisoners who challenge their convictions or sentences "a remedy exactly commensurate with that which had previously been available by habeas corpus in the court of the district where the prisoner was confined." Hill v. United States, 368 U.S. 424, 427, 82 S. Ct. 468, 471, 7 L. Ed. 2d 417 (1962); see also Swain v. Pressley, 430 U.S. 372, 381, 97 S. Ct. 1224, 1230, 51 L. Ed. 2d 411 (1977) ("We have already construed the remedy created by 28 U.S.C. § 2255 as the exact equivalent of the pre-existing habeas corpus remedy."). As the Supreme Court stated shortly after § 2255 was enacted, "the sole purpose [of § 2255] was to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum." Hayman, 342 U.S. at 219, 72 S. Ct. at 272. In other words, Congress did not intend that § 2255 give federal prisoners anything except a new forum in which to raise their claims and seek relief.[34]

---

there were important distinctions. For instance, Rule 35 applied even if the federal convict was not in custody; and § 2255 authorized prisoners to attack a conviction on any ground, whereas Rule 35 was limited to attacks on sentences. A motion under Rule 35 was a criminal procedure. See United States v. Guiterrez, 556 F.2d 1217, 1217 (5th Cir. 1977) (per curiam) ("A rule 35 motion is a proceeding in the original criminal prosecution. Accordingly, the 10 day limitation of Fed. R. App. P. 4(b) governs." (citation omitted)).

[34] For claims that do not challenge a federal conviction or sentence but instead challenge the execution of a sentence, Congress left open a petition for habeas corpus, 28 U.S.C. § 2241, as a separate remedy for federal prisoners. See, e.g., Hajduk v. United States, 764 F.2d 795, 796 (11th Cir. 1985) (per curiam) ("A challenge to the lawfulness of the parole commissions actions cannot be brought pursuant to 28 U.S.C. § 2255. Hajduk's ex post facto argument is nothing

Habeas corpus proceedings have historically been viewed as civil proceedings. See, e.g., Hilton v. Braunskill, 481 U.S. 770, 776, 107 S. Ct. 2113, 2119, 95 L. Ed. 2d 724 (1987) ("Our decisions have consistently recognized that habeas corpus proceedings are civil in nature."); Fisher v. Baker, 203 U.S. 174, 181, 27 S. Ct. 135, 136, 51 L. Ed. 142 (1906) ("The proceeding is in habeas corpus, and is a civil, and not a criminal, proceeding."); Ex parte Tom Tong, 108 U.S. 556, 559, 2 S. Ct. 871, 872, 27 L. Ed. 826 (1883) ("The writ of habeas corpus is the remedy which the law gives for the enforcement of the civil right of personal liberty. . . . Proceedings to enforce civil rights are civil proceedings . . . ."). But cf. Harris v. Nelson, 394 U.S. 286, 293–94, 89 S. Ct. 1082, 1087–88, 22 L. Ed. 2d 281 (1969) ("It is, of course, true that habeas corpus proceedings are characterized as 'civil.' But the label is gross and inexact. Essentially, the proceeding is unique. Habeas corpus practice in the federal courts has conformed with civil practice only in a general sense." (footnote omitted) (citation omitted)). Thus, we held in Sinclair v. Wainwright, 814 F.2d 1516 (11th Cir. 1987), that magistrate judges are authorized under § 636(c) to enter final judgment on habeas petitions filed by state

more than a challenge to the lawfulness of the parole commission's actions, not the lawfulness of the sentence imposed by the court. Such an action must be brought as a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241." (citations omitted)); United States v. Cleto, 956 F.2d 83, 84 (5th Cir. 1992) (per curiam) ("The government correctly points out that Cleto's claim should have been filed as a petition for writ of habeas corpus under 28 U.S.C. § 2241, as he challenges the execution of his sentence rather than the validity of his conviction and sentence.").

prisoners pursuant to 28 U.S.C. § 2254.  Id. at 1519.[35]  Accord Farmer v. Litscher, 303 F.3d 840, 845 (7th Cir. 2002) (concluding that "Article III does not prohibit magistrate judges from entering final judgments in § 2254 proceedings" while reserving judgment as to whether "Article III should preclude a magistrate judge from adjudicating petitions under 28 U.S.C. § 2241 and motions under § 2255").[36]

---

[35] In Sinclair, the petitioner argued that § 636(c) was unconstitutional on its face because it violates Article III.  Sinclair v. Wainwright, 814 F.2d 1516, 1519 (11th Cir. 1987).  Citing Gairola v. Commonwealth of Virginia Department of General Services, 753 F.2d 1281, 1284–85 (4th Cir.1985), and the cases cited therein, we held "that subsection (c) of 28 U.S.C. § 636 is not unconstitutional."  Sinclair, 814 F.2d at 1519.  However, not one of the cases cited in Sinclair involved a habeas corpus petition.  That is, Sinclair reached the conclusion it did without considering the nature of habeas petitions, whether Congress intended that magistrates issue final judgment on such petitions, or the potential constitutional concerns unique to a habeas case that would be implicated by allowing a magistrate to do so.

[36] In addition to the Seventh Circuit, at least three other courts of appeals have considered whether a petition under § 2254 may be referred to a magistrate judge for final disposition, and all have concluded that such a referral is permissible under both the terms of § 636(c) and Article III of the Constitution.  Focusing on the fact that habeas corpus has long been considered a civil proceeding, the Eighth Circuit held that "the plain language of section 636(c) . . . indicates that magistrates, upon consent of the parties and reference by the district court, have jurisdiction to order entry of judgment in a habeas case."  Orsini v. Wallace, 913 F.2d 474, 476 (8th Cir. 1990); accord Norris v. Schotten, 146 F.3d 314, 324–26 (6th Cir. 1998).

In addition, courts have concluded that the "notwithstanding any provision of law to the contrary" language overcomes the problem that nowhere in 28 U.S.C. §§ 2241, 2243 are magistrate judges mentioned as possessing the authority to grant the writ of habeas corpus.  See Orsini, 913 F.2d at 476; see also Norris, 146 F.3d at 324 ("Congress in 1976 passed section 636(b)(1)(B) with the language the language '[n]otwithstanding any provision of law to the contrary' in order to neutralize any problems district courts might encounter designating magistrate judges to perform various functions by virtue of the Supreme Court's holding in Wingo v. Wedding that 28 U.S.C. § 2241(a) vested the power to grant habeas corpus relief only in Article III judges and not magistrate judges because of its reference to 'the judge' or 'the court.'  The Eighth Circuit observed that § 636(c) similarly begins with the '[n]otwithstanding any provision of law to the contrary' language and concluded that Congress had had a similar intention with respect to § 636(c)." (citations omitted)).

31

But it is clear that while § 2255 is comparable to habeas corpus petitions in many respects, § 2255 motions are distinct procedural avenues for federal prisoners who seek to challenge only their convictions or sentences. Cf. 28 U.S.C. § 2255(e) (providing that a district court may not consider a petition for a writ of habeas corpus from a federal prisoner "if it appears that the applicant has failed to apply for relief, by [a § 2555] motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention");[37] Hayman, 342 U.S. at 222, 72 S. Ct. at 274 ("[A] proceeding under Section 2255 is an independent and collateral inquiry into the validity of the conviction."). Therefore, the fact that habeas corpus is traditionally considered a civil matter provides only limited support for the proposition that § 2255 is similarly a civil matter for purposes of § 636(c). Thus, we must canvas the history of § 2255 to divine its true nature.

_____

The Fifth Circuit took a different approach. After discussing the Sixth, Seventh, and Eighth Circuit's reasoning, the Fifth Circuit relied on its prior opinion in United States v. Johnston, 258 F.3d 361 (5th Cir. 2001)—which had previously determined that § 2255 proceedings are civil matters for purposes of § 636(c)—and concluded "a fortiori, § 2254 proceedings too should be considered civil cases." White v. Thaler, 610 F.3d 890, 897 (5th Cir. 2010). Notably, all of these opinions predate the Supreme Court's decision in Stern.

[37] It is not necessary to the resolution of this appeal that we define the scope of § 2255(e). We merely cite the provision as evidence that a habeas corpus petition and a § 2255 motion are separate and distinct avenues for relief.

Eleven years after § 2255 was enacted, a plurality of the Supreme Court stated, in dicta, that "a motion under § 2255, like a petition for a writ of habeas corpus is not a proceeding in the original criminal prosecution but an independent civil suit." Heflin v. United States, 358 U.S. 415, 418 n.7, 79 S. Ct. 451, 453 n.7, 3 L. Ed. 2d 407 (1959) (emphasis added) (citation omitted).[38]  Lower courts—including the former Fifth Circuit[39]—similarly concluded that § 2255 is civil in nature.  See, e.g., United States v. Dunham Concrete Prods., Inc., 501 F.2d 80, 81 (5th Cir. 1974) ("This Circuit has long taken the view that § 2255 proceedings are, like habeas matters, civil actions mainly standing on their own bottoms and that when an order is entered in the § 2255 proceeding which satisfies established notions of finality, either party prejudiced may appeal as in other civil actions.");

---

[38] Although nine Justices joined the Heflin majority opinion, five Justices concluded that the case had not been properly brought as a § 2255 proceeding.  See Heflin v. United States, 358 U.S. 415, 422, 79 S. Ct. 451, 455, 3 L. Ed. 2d 407 (1959) (Stewart, J., joined by four Justices, concurring).  As such, the full language from the majority opinion, which many courts have cited for the proposition that § 2255 is civil, reads as follows:

> To those of us who deem that § 2255 is available, there is no question but that the petition was in time.  It was filed within the 90-day period . . . governing this type of suit.  For a motion under § 2255, like a petition for a writ of habeas corpus is not a proceeding in the original criminal prosecution but an independent civil suit.

Id. at 418 n.7, 79 S. Ct. at 453 n.7 (majority opinion) (emphasis added) (citation omitted).  In other words, the four Justices who deemed § 2255 relief to be available determined that § 2255 is civil.

[39] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

33

United States v. Williamson, 255 F.2d 512, 515–16 (5th Cir. 1958) ("The right of the Government to appeal in habeas corpus cases has properly been recognized by other Courts. It is expressly provided that appeals under 2255 shall be handled in the same manner. This being a civil proceeding, both parties have equal opportunity to appeal." (internal citations omitted)).[40] As Professors Wright and Welling explain, "[t]he Supreme Court and lower courts have repeatedly characterized [§ 2255] action[s] as civil in nature, and, until the Section 2255 Rules were adopted in 1976, the action was governed by the rules and statutes applicable to civil actions." 3 Charles Alan Wright & Sarah N. Welling, Federal Practice and Procedure § 622 (4th ed. 2011) (footnote omitted).[41] Even after 1976, we have stated—although not consistently—that § 2255 is civil in nature. Compare United States v. Jordan, 915 F.2d 622, 628 (11th Cir. 1990) ("[P]roceedings under § 2255 are not proceedings in the original criminal prosecution; rather, the filing of a motion pursuant to § 2255 is akin to initiating an independent civil suit.") with Sassoon v. United States, 549 F.2d 983, 984 (5th Cir. 1977) ("Although often referred to as an independent civil proceeding, an action

---

[40] Notably, both § 2254 petitions and § 2255 motions are governed by Federal Rule of Appellate Procedure 4(a), which is titled "Appeal in a Civil Case." See Rule 11 of the Section 2254 Rules; Rule 11 of the Section 2255 Rules.

[41] The only Supreme Court cases the professors cite is Heflin, which, for reasons explained in note 38, supra, was not speaking for a majority of the Court on that point.

under section 2255 is not automatically subject to [Federal Rule of Civil Procedure] 58, both because of its similarity to a habeas corpus action (which is not necessarily governed by the civil rules) and because it is in a sense a continuation of the original criminal proceeding." (citations omitted)).

From this early history, as well as from the circumstances surrounding the enactment of § 2255, we might reasonably conclude that motions under that section are rightfully considered civil in nature. Before we rest on that conclusion, however, we must acknowledge that "the classification of postconviction proceedings as civil has been criticized." Wright & Welling, supra, at § 622. Much of the criticism stems from the Historical and Revision Note to Rule 1 of the Section 2255 Rules,[42] which states that "a motion under § 2255 is a further step in the movant's criminal case and not a separate civil action." Advisory Committee Note to Rule 1 of the Section 2255 Rules (1976) (emphasis added).[43] This Note,

---

[42] Rule 1 of the Section 2255 Rules is titled "Scope" and describes the cases to which the Section 2255 Rules apply. Rule 1 of the Section 2255 Rules.

[43] The Section 2254 Rules and the Section 2255 Rules were promulgated by the Supreme Court pursuant to 28 U.S.C. § 2072. Congress initially approved the Rules, with limited amendment, in 1976. Act of Sept. 28, 1976, Pub. L. No. 94-426, 90 Stat. 1334. As the Supreme Court has explained,

> In the absence of a clear legislative mandate, the Advisory Committee Notes provide a reliable source of insight into the meaning of a rule, especially when, as here, the rule was enacted precisely as the Advisory Committee proposed. Although the Notes are the product of the Advisory Committee, and not Congress, they are transmitted to Congress before the rule is enacted into law.

however, "is based on a single paragraph from the legislative history of the 1948 statute and without any reference to the cases that have reached a contrary conclusion." Wright & Welling, supra, at § 622.[44] Absent the Advisory Committee Note and this Senate Report, it would be hard to conclude that § 2255 is not a civil matter.

The Government seizes on the Advisory Committee Note and contends that § 2255 motions cannot be considered civil matters for purposes of § 636(c). Of course in 1948 (when § 2255 was enacted) and in 1976 (when the Section 2255 Rules were promulgated), magistrate judges did not possess the authority to

---

United States v. Vonn, 535 U.S. 55, 64 n.6, 122 S. Ct. 1043, 1049n.6, 152 L. Ed. 2d 90 (2002) (citation omitted). Of course, the Advisory Committee Note is to the Section 2255 Rules, not § 2255 itself. Therefore, it is possible that Congress did not appreciate the distinction the Note makes as to the nature of § 2255 or why the distinction might be relevant.

[44] Specifically, the Advisory Committee Note cites a 1948 Senate Report on a Senate bill, the provisions of which were incorporated into § 2255, which explains that one of the advantages of the § 2255 motion remedy over traditional habeas corpus is that

> habeas corpus is a separate civil action and not a further step in the criminal case in which petitioner is sentenced. . . . Even under the broad power in the statute "to dispose of the party as law and justice require" [citing the precursor to 28 U.S.C. § 2243], the court [or] judge is by no means in the same advantageous position in habeas corpus to do justice as would be so if the matter were determined in the criminal proceeding. For instance, the judge (by habeas corpus) cannot grant a new trial in the criminal case. Since the motion remedy is in the criminal proceeding, [§ 2255] affords the opportunity and expressly gives the broad powers to set aside the judgment and to "discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."

S. Rep. No. 80-1256, at 2 (1948) (emphasis added ) (citations omitted).

conduct civil trials and enter final judgment. That is, the determination of whether § 2255 is civil or criminal would not have had any bearing on the authority of the commissioner (in 1948) or the magistrate (in 1976)—only Article III judges were authorized to grant writs of habeas corpus. See 28 U.S.C. § 2241 (1976) ("Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.").[45] It was only in 1979, when Congress enacted § 636(c) and gave magistrates the authority to try civil matters and enter final judgment, that the distinction between whether § 2255 is civil or criminal would have mattered with respect to the magistrate system. In other words, the Advisory Committee Note and the Senate Report provide some—but hardly conclusive—evidence that § 2255 proceedings may not be civil matters.

In further support of its argument, the Government points to the Section 2255 Rules, which, it argues, demonstrate that a motion under that section is akin to a criminal case. For example, unlike a § 2254 proceeding—which is governed by the Federal Rules of Civil Procedure, see Rule 12 of the Section 2254 Rules— § 2255 motions are governed by both the Federal Rules of Civil Procedure and the

---

[45] 28 U.S.C. § 2241 reads the same today. See 28 U.S.C. § 2241 (2006).

Federal Rules of Criminal Procedure, see Rule 12 of the Section 2255 Rules.[46]

The Government also notes that unlike a § 2254 petition, which is docketed as a new civil matter, a § 2255 motion is entered "on the criminal docket of the case in which the challenged judgment was entered." Rule 3(b) of the Section 2255 Rules. Of course, Brown's § 2255 motion was also docketed as a separate civil action (2:11-cv-14115-FJL), and it is from this civil docket number that Brown appeals the Magistrate Judge's decision. Therefore, while it is true that Brown's § 2255 motion was entered on his criminal docket, the only other docket entry related to that motion is the Magistrate Judge's denial of the motion. Rule 3(b) of the Section 2255 Rules is of little persuasive value to our determination.

Beyond the procedural aspects of § 2255, the Government argues that the fundamental reason § 2255 cannot be considered a "civil matter" relates to the form of relief available to federal prisoners under that section. A district judge

---

[46] The Government notes that the Section 2255 Rules permit a judge to authorize a party to conduct discovery pursuant to the Federal Rules of Criminal Procedure or the Federal Rules of Civil Procedure, see Rule 6(a) of the Section 2255 Rules, but does not otherwise delineate the ways in which district courts apply the Criminal Rules to § 2255 proceedings. It appears that the Eighth Circuit allows a district court to apply Federal Rule of Criminal Procedure 52(b)—which authorizes courts to consider "a plain error that affects substantial rights . . . even though it was not brought to the court's attention"—to grant § 2255 relief even if the movant did not raise the issue. See United States v. Daily, 703 F.3d 451, 454 (8th Cir. 2013). Standing alone, however, the availability of plain-error review does not necessarily indicate that § 2255 proceedings are criminal. Cf. SEC v. Diversified Corporate Consulting Grp., 378 F.3d 1219, 1227 n.14 (11th Cir. 2004) ("In an exceptional civil case, we might entertain the objection by noticing plain error.")

38

granting a § 2255 motion has the option to "discharge the prisoner or resentence him or grant a new trial or correct the sentence."  28 U.S.C. § 2255(b).  The Government contends that because a § 2255 motion is a continuation of the movant's criminal case, if the motion is granted and the court orders resentencing, the § 2255 proceeding does not conclude until the relief ordered has been completed.  See United States v. Futch, 518 F.3d 887, 894 (11th Cir. 2008) ("When the district court entered [the movant's] new sentence after resentencing, it not only entered a final sentence in [the movant's] criminal case but also completed the § 2255 proceedings by providing the relief awarded in that § 2255 case.").[47]  But cf. Dunham Concrete Prods., Inc., 501 F.2d at 81–82 ("In our case the § 2255 proceedings have ended with an order requiring the Government, if it wishes to persist in an effort to punish Dunham, to return to Square One and recommence its effort ab initio.").  In short, the Government argues that since a

---

[47] Futch concerned the timing of an appeal by a movant whose § 2255 motion had been granted with respect to his sentence but denied as to the underlying conviction.  Futch, United States v. Futch, 518 F.3d 887, 889 (11th Cir. 2008).  After the court resentenced the movant, the movant sought to appeal both the new sentence and the district court's denial of the § 2255 motion with respect to the underlying convictions.  Id.  We held that because the § 2255 proceeding was not final until the movant had been resentenced, his appeal of the denial of the § 2255 motion was timely.  Id. at 894.  Futch has nothing to do with whether § 2255 is civil or not.  Rather, the case implicates issues of judicial economy and the timing of an appeal.  The case does not support the Government's position in the way it contends.

new criminal trial and sentencing cannot be considered civil, a court considering whether to grant such relief under § 2255 is not hearing a civil matter.

In certain limited circumstances, federal prisoners may challenge their detention via habeas corpus and file petitions pursuant to 28 U.S.C. § 2241 (2006). Importantly, because habeas corpus is governed by equitable principles, see Danforth v. Minnesota, 552 U.S. 264, 278, 128 S. Ct. 1029, 1040, 169 L. Ed. 2d 859 (2008), the relief available to habeas petitioners is no longer limited to release from confinement. As Justice Scalia has explained,

> At the time of [42 U.S.C.] § 1983's adoption [in 1871], the federal habeas statute mirrored the common-law writ of habeas corpus, in that it authorized a single form of relief: the prisoner's immediate release from custody. See Act of Feb. 5, 1867, § 1, 14 Stat. 386. Congress shortly thereafter amended the statute, authorizing federal habeas courts to "dispose of the party as law and justice require," Rev. Stat. § 761. The statute reads virtually the same today, 28 U.S.C. § 2243 ("dispose of the matter as law and justice require"). We have interpreted this broader remedial language to permit relief short of release.

Wilkinson v. Dotson, 544 U.S. 74, 85, 125 S. Ct. 1242, 1250, 161 L. Ed. 2d 253 (2005) (Scalia, J., concurring). The Government suggests in a footnote that "a habeas petition properly filed pursuant to the savings clause in Section 2255 should not be considered a purely 'civil matter' that may be delegated to a magistrate

judge under Section 636(c)(1)." Gov't Br. at 25 n.15.[48] We believe the opposite is more likely the case: because § 2241 has long been considered civil in nature, and because the remedies under § 2255 are "commensurate" with the habeas corpus remedy under § 2241, see Hill, 368 U.S. at 427, 82 S. Ct. at 471, there is reason to believe § 2255 is also properly construed civil in nature.

To summarize, the overwhelming history of § 2255 indicates that motions filed under that section could be considered civil in nature. Although there is limited support for the proposition that § 2255 is a criminal matter, or at least not purely civil in nature, the stray remarks in the Advisory Committee Note and a Senate Report on a bill that was incorporated into the bill that became § 2255 are not sufficient to alter the nature of § 2255 proceedings. Therefore, we must now consider whether, given §2255's nature as a civil matter, Congress intended that § 636(c) authorize magistrate judges to enter final judgment on § 2255 motions.

## B.

Although § 2255 proceedings could be considered "civil matters" within the meaning of § 636(b), we nevertheless could also conclude that Congress did not intend to authorize magistrate judges to enter final judgment on such motions.

---

[48] As the Government correctly recognizes, the question of whether § 636(c) authorizes a magistrate judge to enter final judgment on a federal prisoner's § 2241 motion is not before us.

This conclusion is based largely on the legislative history of the Federal Magistrate Act of 1979. Simply put, nothing in the legislative history suggests Congress intended for magistrate judges to possess the authority to enter final judgment on applications for postconviction relief—or that they even considered the issue.

As explained in part II.D., supra, Congress enacted the Federal Magistrate Act of 1979 because it was worried that "[i]f [parties'] civil cases are forced out of court as a result [of the delays in civil cases being heard by district courts], they lose all their procedural safeguards." S. Rep. No. 96-74, at 4 (1979), reprinted in 1979 U.S.C.C.A.N. 1469, 1472. In other words, the Senate was concerned that parties would seek to resolve their disputes outside the courthouse, whether by arbitration or settlement. Of course, federal prisoners seeking postconviction relief via § 2255 cannot resolve their claim outside the courthouse. From our search of the relevant legislative history on the 1979 Act, we found no mention of § 2255 motions or concern for the plight of federal prisoners facing delays in having their claims for postconviction relief resolved. The legislative history reveals that Congress was responding to an entirely separate concern.

We doubt that by amending § 636 to allow magistrate judges to enter final judgment in civil matters, Congress also implicitly amended the habeas corpus chapter of Title 28 to allow magistrate judges to enter final judgment. 28 U.S.C. §2255 is clear: the sentencing court enters judgment on such motions. Similarly,

§ 2241 grants the authority to issue the writ of habeas corpus to "the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions," 28 U.S.C. § 2241(a). It is a fundamental canon of statutory construction that "[a]mendments by implication, like repeals by implication, are not favored." United States v. Welden, 377 U.S. 95, 102 n.12, 84 S. Ct. 1082, 1087 n.12, 12 L. Ed. 2d 152 (1964) (citing 1 Sutherland, Statutes and Statutory Construction 365–66 (3d ed. 1943)). As we read Wingo,[49] the Supreme Court was concerned about Congress amending the habeas statutes by sleight of hand, ultimately concluding that while Congress authorized magistrate judges to conduct some evidentiary hearings, it did not authorize them to conduct an evidentiary hearing in a habeas corpus case. The 1976 Act responded to that concern by clearly indicating that magistrate judges are authorized to conduct evidentiary hearings on prisoner petitions for postconviction relief. See Act of Oct. 21, 1976, Pub. L. No. 94-577, § 1, 90 Stat. 2729, 2729 (codified as amended at 28 U.S.C. § 636(b)). No such evidence is present with respect to the magistrate

---

[49] Although Congress superseded the ultimate holding of Wingo, it did not object to the Supreme Court's method of analysis in that case. The legislative history of the 1976 Act, which superseded Wingo, does not suggest that Wingo was incorrectly reasoned as initial matter. Rather, the 1976 Act served as a "restatement and clarification of the Congressional intention" found lacking in Wingo. H.R. Rep. No. 94-1609, at 5 (1976), reprinted in 1976 U.S.C.C.A.N. 6162, 6165.

judge's authority to try civil matters.[50]  When Congress amended § 636 again in

1979, it was aware of how the Supreme Court interpreted that section in relation to

the habeas corpus statutes; yet it failed to make clear that § 636(c) amended the

habeas corpus statutes and § 2255.  To conclude that Congress, through the vague

and general terms of § 636(c), intended to fundamentally alter the manner in which

postconviction relief is and historically has been adjudicated would run contrary to

the oft-stated principle that "Congress . . . does not alter the fundamental details of

a regulatory scheme in vague terms or ancillary provisions—it does not, one might

---

[50] While not directly on point, St. Martin Evangelical Lutheran Church v. South Dakota, 451 U.S. 772, 101 S. Ct. 2142, 68 L. Ed. 2d 612 (1981), provides further support for our conclusion that we should not presume that Congress implicitly amended § 2255.  In St. Martin, a parochial school challenged the IRS's determination that it was required to pay taxes imposed by the Federal Unemployment Tax Act (26 U.S.C. §§ 3301–3311).  At issue was a 1976 amendment to § 3309(b), the provision that exempts certain employers from the requirement to pay unemployment taxes.  The amendment eliminated the exemption for educational institutions; thus, the question was whether the amendment altered the exemption for church schools.  The Supreme Court determined that it did not because (1) Congress made no change to the subsection that exempted church schools (which the court determined were covered under the section applying to churches and church organizations), (2) it made no mention of church schools, (3) and the general references in the legislative history to eliminating the exemption for schools did not evince an intent to include religious schools as part of the change.  St. Martin, 451 U.S. at 785–86, 94 S. Ct. at 2149–50.

A similar situation occurred with respect to magistrates and the habeas statutes.  Congress did not expressly amend the habeas statutes and § 2255 to allow magistrate judges to grant the writ or enter judgment on § 2255 motions.  It made no statement indicating an intent to allow magistrate judges to exercise such authority.  And to the extent Congress discussed civil matters as part of § 636(c), it did not indicate that it intended to sweep habeas corpus actions and § 2255 motions within the ambit of that provision.

say, hide elephants in mouseholes." Whitman v. Am. Trucking Ass'ns, 531 U.S. 457, 468, 121 S. Ct. 903, 909–10, 149 L. Ed. 2d 1 (2001).

Moreover, given the special nature of § 2255 proceedings—which involve the review of a district court's actions during a criminal prosecution and trial— there are additional, policy-based reasons why Congress would not have intended magistrate judges to have § 636(c) dispositive authority over such motions. First, magistrate judges are appointed by the district courts. In some instances, the magistrate judge would be evaluating the constitutionality not just of the criminal proceeding but of the judge's conduct at trial. For example, if a § 2255 motion raises a claim of ineffective assistance of appellate counsel for failing to raise a Pate claim,[51] a magistrate judge would necessarily need to review whether the district court, in failing to conduct a competency hearing, denied the federal prisoner of his procedural due process rights. Congress could have reasonably

---

[51] The Supreme Court has recognized that "the failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." Drope v. Missouri, 420 U.S. 162, 172, 95 S. Ct. 896, 904, 43 L. Ed. 2d 103 (1975) (citing Pate v. Robinson, 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966)). The reviewing court considers "whether the objective facts known to the trial court at the time create a bona fide doubt as to mental competency," regardless of whether the party requested a competency hearing or determination. Wright v. Sec'y for Dep't of Corr., 278 F.3d 1245, 1256 (11th Cir. 2002). Ordinarily, Pate claims must be raised on direct appeal or they are waived. See Battle v. United States, 419 F.3d 1292, 1298 (11th Cir. 2005). Thus, for a § 2255 motion to raise a cognizable Pate claim, the federal prisoner's counsel on direct appeal would have needed to be constitutionally ineffective.

concluded that it could not expect magistrate judges to exercise independence when reviewing, pursuant to § 2255, the actions of those who would reappoint them to their positions.

Moreover, allowing a magistrate judge to enter final judgment on a § 2255 motion would upset a federal criminal conviction, and Congress has never authorized magistrate judges—or their predecessors, the commissioners—to try federal felony offenses.[52] Had Congress intended that magistrate judges review and enter judgment in felony cases, we might have expected some indication of that intent.

From the absence of legislative history indicating that Congress intended that magistrate judges enter final judgment on § 2255 motions, we could conclude,

---

[52] That is not to say, necessarily, that Congress could not authorize magistrate judges to try felony offenses. Historically, the enforcement of federal criminal law was not exclusively within the province of Article III courts. "Very early in our history, Congress left the enforcement of selected federal criminal laws to state courts and to state court judges who did not enjoy the protections prescribed for federal judges in Art. III." Palmore v. United States, 411 U.S. 389, 402, 93 S. Ct. 1670, 1678, 36 L. Ed. 2d 342 (1973); see also generally Warren, supra note 8. And the Supreme Court has suggested that Article III does not require that federal crimes be tried before an Article III judge. Palmore, 411 U.S. at 400, 93 S. Ct. at 1678 (stating that "there is no support . . . in either constitutional text or in constitutional history and practice" for the proposition that "criminal offenses under the laws passed by Congress may not be prosecuted except in courts established pursuant to Art. III"). Congress has chosen to grant federal courts exclusive jurisdiction over "all offenses against the laws of the United States." 18 U.S.C. § 3231 (2012). Simply because Congress granted exclusive jurisdiction to federal courts, however, does not necessarily mean that it could not grant state courts some responsibility to administer federal criminal law. See Testa v. Katt, 330 U.S. 386, 391–4 67 S. Ct. 810, 813–15, 91 L. Ed. 967 (1947) (reversing the Rhode Island Supreme Court's decision to not enforce a federal penal law on state-policy grounds).

despite our analysis in part III.A., that § 636(c) does not authorize magistrate judges to do so.

## C.

Whether § 2255 is a "civil proceeding" that a magistrate judge can decide is ambiguous. Moreover, as explained infra, we harbor some concern as to the constitutionality of allowing magistrate judges to decide § 2255 motions. Therefore, we invoke the doctrine of constitutional avoidance to decide that § 2255 is not a civil matter for purposes of § 636(c). The doctrine of constitutional avoidance directs that "when deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail." Clark v. Martinez, 543 U.S. 371, 380–81, 125 S. Ct. 716, 724, 160 L. Ed. 2d 734 (2005). In this subpart, we briefly note—though we need not resolve—our concerns regarding the constitutionality of referring a § 2255 motion to a magistrate judge for final adjudication. Because a § 2255 proceeding could plausibly be considered a civil matter or a noncivil matter for purposes of 28 U.S.C. § 636(c), we hold that a § 2255 proceeding is not a civil matter so as to avoid Article III concerns. Thus, we decline to pass on the constitutional question presented by Appeal No. 12-10293.

1.

At the outset, we harbor serious concerns as to the facial constitutionality of § 636(c). As described in part II.E., Article III requires that the "judicial Power of the United States" be vested in the Supreme Court and in any inferior courts that Congress deems necessary to create, and that the judges of those courts must have the protections of life tenure and undiminishable salary. See U.S. Const. art. III, § 1. The Framers thought it essential that Article III provide these protections so as to ensure an "independent spirit in the judges, which must be essential to the faithful performance of so arduous a duty." The Federalist No. 78, at 428 (Alexander Hamilton) (E.H. Scott ed., 1898). As the Supreme Court has noted, "Article III is an inseparable element of the constitutional system of checks and balances that both defines the power and protects the independence of the Judicial Branch." Stern v. Marshall, ___ U.S. ___, ___, 131 S. Ct. 2594, 2608, 180 L. Ed. 2d 475 (2011) (citation and internal quotation marks omitted). It could "neither serve its purpose in the system of checks and balances nor preserve the integrity of judicial decisionmaking if the other branches of the Federal Government could confer the Government's 'judicial Power' on entities outside Article III." Id. at ___, 131 S. Ct. at 2609. Therefore, magistrate judges, as entities outside Article III, cannot exercise the "judicial Power of the United States."

In Stern, the Supreme Court held that a bankruptcy court violated Article III when it entered final judgment on a bankruptcy estate's permissive state-law counterclaim against a creditor when the counterclaim was not resolved in the process of ruling on the creditor's proof of claim. Id. at ___, 131 S. Ct. at 2608. Although Stern concerned bankruptcy courts and here we deal with magistrate judges, the rationale motivating the Supreme Court's decision in Stern would appear to apply with equal force here.

The Supreme Court in Stern rejected the contention that bankruptcy courts act as adjuncts of the district court because, in adjudicating a bankruptcy estate's counterclaim, the bankruptcy court exercises the "essential attributes of judicial power" by "resolv[ing] [a]ll matters of fact and law in whatever domains of the law to which the parties' counterclaims might lead." See id. at ___, 131 S. Ct. at 2618–19 (second alteration in original) (internal quotation marks omitted). In addition, the bankruptcy court enters final judgment subject to Article III review only if the party decides to appeal. Id. at ___, 131 S. Ct. at 2619; see N. Pipeline Const. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 86 n.39, 102 S. Ct. 2858, 2879 n.39, 73 L. Ed. 2d 598 (1982) (plurality opinion) ("[T]he exercise of the judicial power must be met at all stages of adjudication, and not only on appeal, where the court is restricted to considerations of law, as well as the nature of the case as it has been shaped at the trial level.").

49

In light of <u>Stern</u>, our holding in <u>Sinclair</u>—that § 636(c) is facially constitutional—has certainly been called into question.  Like bankruptcy judges, magistrate judges acting pursuant to § 636(c) exercise the essential attributes of judicial power by "resolving '[a]ll matters of fact and law in whatever domains of the law to which'" the parties' civil claims might lead.  <u>Stern</u>, ___ U.S. at ___, 131 S. Ct. at 2619 (alteration in original) (quoting <u>N. Pipeline Const. Co.</u>, 458 U.S at 92, 102 S. Ct. at 2852 (Rehnquist, J., concurring in the judgment)); <u>see also</u> <u>id.</u> at ___, 131 S. Ct. at 2615 ("[T]his case involves the most prototypical exercise of judicial power: the entry of a final, binding judgment <u>by a court</u> with broad substantive jurisdiction, on a common law cause of action, when the action neither derives from nor depends upon any agency regulatory regime." (emphasis in original)).  Similarly, like the bankruptcy judge, the magistrate judge enters final judgment subject only to appellate review, which <u>Stern</u> deemed to be insufficient Article III control.  Therefore, Congress's conclusion that magistrate judges are adjuncts of the district courts cannot be deemed correct.  Instead, magistrate judges exercise the "judicial Power of the United States," despite the fact that they lack Article III protections.  <u>Cf.</u> <u>id.</u> at ___, 131 S. Ct. at 2601 ("The Bankruptcy Court in this case exercised the judicial power of the United States by entering final judgment on a common law tort claim, even though the judges of such courts enjoy neither tenure during good behavior nor salary protection. We conclude that,

50

although the Bankruptcy Court had the statutory authority to enter judgment on Vickie's counterclaim, it lacked the constitutional authority to do so.").

The fact that the parties consent to a magistrate judge entering final judgment does not (notwithstanding Congress's statement in the 1979 congressional reports to the contrary) obviate the Article III concerns. As the Supreme Court has indicated, "Article III, § 1, serves both to protect the role of the independent judiciary within the constitutional scheme of tripartite government, and to safeguard litigants' right to have claims decided before judges who are free from potential domination by other branches of government." Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 848, 106 S. Ct. 3245, 3255, 92 L. Ed. 2d 675 (1986) (citations and internal quotation marks omitted). And while the parties' consent to the magistrate judge's jurisdiction may mitigate the concern regarding litigants' rights, "[t]o the extent that this structural principle is implicated in a given case, the parties cannot by consent cure the constitutional difficulty for the same reason that the parties by consent cannot confer on federal courts subject-matter jurisdiction beyond the limitations imposed by Article III, § 2." Id. at 850–51, 106 S. Ct. at 3256–57.

In Day v. Persels & Associates, LLC, 729 F.3d 1309 (11th Cir. 2013), we explained that Stern did not abrogate our holding in Sinclair because Sinclair relied on attributes of magistrate judges that the Supreme Court did not mention in Stern

when it evaluated bankruptcy judges. Id. at 1323–24. We conceded that "Stern

suggests that some of the factors cited in those decisions [relied on by Sinclair as

support for upholding § 636(c)] may not provide the district court sufficient control

over magistrate judges to avoid a problem under Article III when a magistrate

judge enters a judgment." Id. But because Sinclair also relied on additional

factors, such as a district court's authority to cancel an order of reference sua

sponte and the requirement that a district court must consent to transfer a case to a

magistrate, Stern did not directly conflict with our previous decision in Sinclair.

Id. However, variations of those additional factors we highlighted in Day are also

present in the bankruptcy court. See 28 U.S.C. § 157(a) (2006) ("Each district

court may provide that any or all cases under title 11 and any or all proceedings

arising under title 11 or arising in or related to a case under title 11 shall be

referred to the bankruptcy judges for the district." (emphasis added)); id. § 157(d)

("The district court may withdraw, in whole or in part, any case or proceeding

referred under this section, on its own motion or on timely motion of any party, for

cause shown." (emphasis added)). Although Stern did not address these factors,

they certainly were not sufficient to save the bankruptcy court from Article III

problems.

## 2.

Even if § 636(c) does not raise constitutional concerns on its face, allowing a magistrate judge to enter final judgment in a § 2255 proceeding implicates unique Article III problems. This is so because a magistrate judge entertaining such a motion would create an "ironic situation whereby non-Article III magistrate judges review and reconsider the propriety of rulings by Article III district judges, but do not themselves have to worry about review" by the district court. Johnston, 258 F.3d at 371. Such a situation would be "ironic"—i.e., possibly unconstitutional— for two reasons.

First, an Article I magistrate judge entertaining a § 2255 motion would, in effect, be sitting in a quasi-appellate capacity, with the power to vacate the judgment the district court entered in the case. It is axiomatic that non-Article III judges may not revise or overturn Article III judgments. See Chicago & S. Air Lines, Inc. v. Waterman, S.S. Corp., 333 U.S. 103, 113, 68 S. Ct. 431, 427, 92 L. Ed. 568 (1948) ("Judgments, within the powers vested in courts by the Judiciary Article of the Constitution, may not lawfully be revised, overturned or refused faith and credit by another Department of Government."); Johnston, 258 F.3d at 373 (Higginbotham, J., specially concurring) ("Review by the Court of Appeals of a magistrate judge's final ruling upon a section 2255 petition offers little protection for the structural component of Article III . . . .").

Second, the authority of a district court to review the magistrate judge's decision, even if neither party invokes such authority, is essential to ensuring that Article III values are protected. See, e.g., Peretz v. United States, 501 U.S. 923, 937, 111 S. Ct. 2661, 2669–70, 115 L. Ed. 2d 808 (1991) (finding no Article III issue with parties consenting to a magistrate judge conducting voir dire in a felony trial because "the entire process takes place under the district court's total control and jurisdiction" (internal quotation marks omitted)); United States v. Woodard, 387 F.3d 1329, 1334 (11th Cir. 2004) (per curiam) (holding that delegating the authority to conduct a plea hearing to magistrate judges does not violate Article III's structural principles because "a district court, as a matter of law, retained the ability to review the Rule 11 [plea] hearing if requested" (emphasis in original)).[53]

---

[53] In Woodward, we described somewhat imprecisely the circumstances giving rise to the appeal, which thus slightly muddled our constitutional holding. We therefore take this opportunity to clarify our reasoning in that case.

The district court in Woodward referred the proceeding to the magistrate judge with instructions to submit a report and recommendation regarding all pretrial motions. The magistrate judge then conducted a change of plea hearing and a Federal Rule of Criminal Procedure Rule 11 colloquy. United States v. Woodward, 387 F.3d 1329, 1330 (11th Cir. 2004) (per curiam). The magistrate judge informed the defendant that he had the option to have a district judge hear the change of plea, but the defendant did not object. Id. After the plea colloquy, the magistrate judge "accepted [the defendant's] guilty plea as follows: 'The plea is, therefore, accepted by me, and the defendant is now adjudged guilty of that offense.'" Id.

The district court then conducted a sentencing hearing and imposed sentence. Id. The district judge asked, "Now that sentence has been imposed, does the Defendant or his counsel object to the Court's finding of fact or to the manner in which sentence was pronounced?" Id. at 1331 (internal quotation marks omitted). The defendant did not object to the sentence or the plea the colloquy conducted by the magistrate judge. Id.

54

Were a magistrate judge to enter final judgment on a § 2255 motion, no such procedure for district court review would exist. The magistrate judge would be subject only to appellate review by the circuit court, bypassing the district court entirely. And even then, a court of appeals might never review the magistrate judge's determination if the court of appeals does not grant the movant permission to appeal. See 28 U.S.C. § 2253(c)(1) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255. A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.").[54]

---

We held in Woodward that "there was no error, statutory or constitutional, in the magistrate judge accepting Woodard's guilty plea and adjudicating him guilty." Id. at 1330. But that holding overlooked the mechanics of the district court's actions in that case. For although the magistrate judge purported to adjudge the defendant guilty, it was the district court that actually entered judgment. That is, the magistrate judge did not make the final adjudication of guilt.

We noted in Woodward that different magistrate judges categorized their actions as an acceptance of a plea or a report and recommendation, "reveal[ing] a lack of uniformity in the language used by magistrate judges." Id. at 1334. But we concluded that the key reason their actions did not run afoul of Article III was that "a district court, as a matter of law, retained the ability to review the Rule 11 hearing if requested." Id. We believe that there is value in uniformity; thus we clarify today that the magistrate judge's action in such proceedings are akin to a report and recommendation rather than a final adjudication of guilt.

[54] As indicated in part III.C.1, surpa, that the court of appeals might review a magistrate judge's disposition of a § 2255 motion does not eliminate the Article III concerns. See N. Pipeline Const. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 86 n.39, 102 S. Ct. 2858, 2879 n.39, 73 L. Ed. 2d 598 (1982) (plurality opinion). When a § 2255 motion reaches this court on appeal, we review findings of fact under a clear error standard and determinations of law de novo.

\*\*\*

To summarize, the Supreme Court's decision in <u>Stern</u> undermines some of our reasons for upholding the facial constitutionality of § 636(c). Additionally, allowing a magistrate judge to enter final judgment on a federal prisoner's § 2255 motion raises serious constitutional concerns. However, we need not we decide whether § 636(c) is unconstitutional in light of <u>Stern</u>. Nor must we resolve whether allowing a magistrate judge to enter final judgment on a § 2255 motion is unconstitutional. Principles of constitutional avoidance counsel that "when deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail." <u>Clark</u>, 543 U.S. at 380–81, 125 S. Ct. at 724. Therefore, although § 636(c) could plausibly be read to authorize a magistrate judge to enter final judgment in a § 2255 proceeding, to

---

<u>Castillo v. United States</u>, 200 F.3d 735, 736 (11th Cir. 2000) (per curiam). The record is cold, and the issues presented are shaped almost entirely by the proceedings below. In contrast, a district court reviewing a magistrate judge's report and recommendation is required to

> make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1). In other words, a district court has much greater discretion in reviewing the action of a magistrate judge than does a circuit court on appeal.

56

avoid Article III concerns we hold that it does not because such a reading is equally plausible.

## IV.

We hold that 28 U.S.C. § 636(c) does not authorize a magistrate judge to enter final judgment on a § 2255 motion.  Therefore, we need not resolve the constitutional question presented by the Magistrate Judge's certificate of appealability.  Nor do we express any view regarding the merits of Brown's underlying claims for § 2255 relief.  Accordingly, the Magistrate Judge's order denying Brown's § 2255 motion is VACATED.  The motion is REMANDED to the District Court for disposition.

SO ORDERED.