[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12045
_____

D.C. Docket Nos. 6:13-cv-01439-ACC-GJK;  6:10-cr-00161-ACC-GJK-1


MICHAEL FRANK BURGESS,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 6, 2017)

Before ROSENBAUM and JULIE CARNES, Circuit Judges, and SCHLESINGER,[*] District Judge.

ROSENBAUM, Circuit Judge:

_____

[*] Honorable Harvey E. Schlesinger, United States District Judge for the Middle District of Florida, sitting by designation.

Efficiency can be a virtue, particularly for a court.  But sometimes we can have too much of even a good thing.[1]  That's what happened here.  In this case, Petitioner-Appellant Michael Frank Burgess filed an 18 U.S.C. § 2255 motion challenging his conviction and sentence.  Although the government opposed Burgess's motion on the merits, the district court instead, and of its own volition, invoked a collateral-action waiver in Burgess's plea agreement with the government to dismiss one of Burgess's claims.  Today we hold that a court may not do that.

## I.

Petitioner-Appellant Michael Frank Burgess pled guilty to conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371, and money laundering, in violation of 18 U.S.C. § 1957.  In his plea agreement, among other things, Burgess waived his right to appeal—which included his right to collaterally challenge his conviction and sentence—except in four limited circumstances, none of which applies to the collateral action that is the subject of this appeal.[2]  During his

---

[1] *See* William Shakespeare, As You Like It act 4, sc. 1 ("[C]an one desire too much of a good thing?").

[2] In particular, the appeal waiver states,

> The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and ***expressly waives the right to appeal defendant's sentence or to challenge it collaterally*** *on any ground*, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as

2

change-of-plea hearing, Burgess testified under oath that he fully understood this waiver of his right to file a collateral action:

> THE COURT:  . . . [U]nder this plea agreement you're giving up your right to claim ineffective assistance of your own counsel in regard to representing you with respect to this matter.  Do you understand?
>
> BURGESS:  Yes, I do.

The district court accepted Burgess's guilty plea and ultimately sentenced Burgess to 180 months' imprisonment.

Burgess filed a direct appeal, but his counsel filed a motion to withdraw under *Anders v. California*, 386 U.S. 738 (1967), asserting that no arguable appellate issues of merit existed.  We agreed, granted his counsel's motion, and affirmed Burgess's conviction and sentence.

Burgess then filed a *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  He listed eight grounds for relief.  Among them was Claim 5, the subject of this appeal.  In Claim 5, Burgess contended that his counsel was ineffective because he failed to file timely objections to the Pre-

---

determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

(Emphasis in original omitted; emphasis added).

Sentence Investigation Report ("PSR") and to object to aspects of it at sentencing. He also alleged that counsel should have presented mitigating evidence at the sentencing hearing to refute the number of victims and the loss amount, two factors that resulted in the addition of enhancements that increased Burgess's guideline range.

The district court ordered the government to "file a response indicating why the relief sought in the motion should not be granted." Also in this order, the court instructed the government to, among other things,

> (1)    State whether Petitioner has used any other available federal remedies including any prior post-conviction motions and, if so, whether an evidentiary hearing was accorded to the movant in any federal court;
>
> . . .
>
> (3)    Summarize the results of any direct appellate relief sought by Petitioner to include citation references and copies of appellant and appellee briefs from every appellate proceeding.[]
>
> (4)    Provide a detailed explanation of whether the motion was or was not filed within the one-year limitation period as set forth in 28 U.S.C. § 2255 (Supp. 1996).

(Emphasis omitted). And specifically with respect to the government's response to Requirement (3), the district court directed the government to "indicate whether each claim was raised on direct appeal." If the petitioner did not raise a claim on direct appeal, the district court instructed the government to "indicate whether it

4

waives the defense concerning the failure to raise the claim on direct appeal." (Citations omitted). Similarly, if the petitioner did raise a claim on direct appeal, the court required the government to "indicate whether it waives the defense concerning the relitigation of claims that were previously raised and disposed of on direct appeal." (Citation omitted).

In its response, the government invoked no affirmative defenses, despite the district court's specific inquiry about several in particular. Indeed, the government expressly denied the applicability of the defenses of procedural default and procedural bar. And it likewise did not assert the defense of timeliness, though the government indicated that it was investigating whether Burgess timely filed his motion and said it "may request permission to amend its response if [it discovers] that the motion was not timely filed." Instead of relying on any affirmative defenses, the government argued that on the merits of Burgess's motion, he was not entitled to relief under § 2255.

After considering the government's response and Burgess's reply, the district court denied Burgess's § 2255 motion. In reaching this conclusion, the court determined that seven of Burgess's claims lacked merit. But it dismissed Claim 5 based solely on the collateral-action waiver in Burgess's plea agreement and did not consider the merits of the claim. The court did not give the parties notice that it was considering dismissing Claim 5 based on the collateral-action

waiver, and it did not ask the government whether the government wished to invoke the waiver.

Burgess sought a certificate of appealability, and a judge of this Court granted it as to the following issue:

> Whether the district court erred by denying Mr. Burgess's claim of ineffective assistance, which was based on trial counsel's failure to object to the loss calculations used to determine Mr. Burgess's guideline range at sentencing [Claim 5], by *sua sponte* applying his sentence-appeal waiver?

## II.

Whether the district court has the authority, on its own initiative, to invoke a collateral-action waiver from the § 2255 movant's plea agreement and dismiss the movant's § 2255 motion on that basis[3] raises a question of law. *See Day v. McDonough*, 547 U.S. 198 (2006) (deciding whether, as a matter of law, a district court has the authority to *sua sponte* deny a state prisoner's 18 U.S.C. § 2254 petition as untimely). We conduct *de novo* review of questions of law. *Pope v. Sec'y, Fla. Dep't of Corr.*, 752 F.3d 1254, 1261 (11th Cir. 2014) (citation omitted).

If a district court does have that authority, we review for abuse of discretion the district court's decision to exercise it. *Cf. Day*, 547 U.S. at 199, 200 (reviewing

---

[3] This case does not involve the issue of whether a defendant can knowingly waive in a plea agreement the right to collaterally raise an ineffective-assistance issue involving a future act or failure to act on the part of counsel, that had not occurred at the time of the plea. *See Gomez-Diaz v. United States*, 433 F.3d 788, 793 (11th Cir. 2005).

6

for abuse of discretion the district court's *sua sponte* application of the Antiterrorism and Effective Death Penalty Act of 1996's ("AEDPA") statute of limitations to dismiss a state prisoner's § 2254 motion).

## III.

We begin by considering whether a district court has the authority in resolving a § 2255 motion to raise in the first instance a plea agreement's collateral-action waiver. Two competing lines of legal reasoning—the rules applying to civil cases, on the one hand, and those applying to certain aspects of collateral-review cases (the "*Day* line of cases"), on the other—seem to point to different answers to our question. We examine both lines of reasoning.

### A. The Rules Applying to Civil Cases

We have previously concluded that a § 2255 motion's "nature [is that of] a civil matter." *Brown v. United States*, 748 F.3d 1045, 1065 (11th Cir. 2014).[4] The Federal Rules of Civil Procedure "govern the procedure in all civil actions and proceedings in the United States district courts," Fed. R. Civ. P. 1, "to the extent

---

[4] As we explained in *Brown*,

> To summarize, the overwhelming history of § 2255 indicates that motions filed under that section could be considered civil in nature. Although there is limited support for the proposition that § 2255 is a criminal matter, or at least not purely civil in nature, the stray remarks in the Advisory Committee Note [to Rule 1 of the Rules Governing Section 2255 Cases] and a Senate Report on a bill that was incorporated into the bill that became § 2255 are not sufficient to alter the nature of § 2255 proceedings.

748 F.3d at 1065.

7

that the practice in [§ 2255] proceedings . . . is not specified in a federal statute . . . or the Rules Governing Section 2255 Cases [("§ 2255 Rules" or "§ 2255 R.")]," Fed. R. Civ. P. 81(a)(4)(A).  Similarly, § 2255 Rule 12 expressly authorizes application of the Federal Rules of Civil Procedure to a § 2255 proceeding "to the extent that they are not inconsistent with any statutory provisions or [the § 2255 Rules]."[5]

So we turn to the § 2255 Rules to ascertain whether they answer our question about whether the district court may, on its own initiative, invoke the collateral-action waiver from a plea agreement to dismiss a case.  Rule 5(b), § 2255 R., sets forth the requirements for any response the government might file to a § 2255 motion.  It requires the government to "address the allegations in the motion" and to "state whether the moving party has used any other federal remedies, including any prior post-conviction motions under these rules or any previous rules, and whether the moving party received an evidentiary hearing." § 2255 R. 5(b).  The § 2255 Rules say nothing further about the government's response to a § 2255 motion or about the district court's role in raising affirmative defenses.

---

[5] Rule 12 similarly provides for the Federal Rules of Criminal Procedure to be applied to a § 2255 proceeding "to the extent that they are not inconsistent with any statutory provisions or [the § 2255 Rules]."  § 2255 R. 12.

We therefore look to the Federal Rules of Civil Procedure to see whether they fill the gap. Rule 8(c) governs the pleading of affirmative defenses such as a collateral-action waiver. It requires a party to "affirmatively state any avoidance or affirmative defense, including . . . waiver." Fed. R. Civ. P. 8(c). If a party fails in its answer or amended answer to assert an affirmative defense identified in Rule 8(c), the party forfeits the defense. Fed. R. Civ. P. 12(b), 15(a); *see also Day*, 547 U.S. at 207-08 (citing Fed. R. Civ. P. 8(c), 12(b), 15(a)); *Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1012 (11th Cir. 1982). And we have recognized that "courts generally lack the ability to raise an affirmative defense *sua sponte*." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1239 (11th Cir. 2010) (citation, quotation marks, and alteration omitted). That's because "the principle of party presentation [is] basic to our adversary system," *Wood v. Milyard*, 566 U.S. 463, ___, 132 S. Ct. 1826, 1833 (2012), and the court's invocation of a party's affirmative defense generally conflicts with that ideal.

We see nothing rendering the requirements of Rules 8(c), 12(b), and 15(a), "inconsistent with any statutory provisions or [the § 2255 Rules]." While the Civil Rules impose requirements on the government's answer beyond those set forth in the § 2255 Rules, nothing about the additional requirements is at odds with the § 2255 Rules. Applying the Civil Rules, the government's response to a § 2255

motion must expressly invoke a collateral-action waiver. Otherwise, the government may be deemed to have forfeited that defense.

As a result, if the line of legal reasoning governing civil cases applies here, then the government may have forfeited its collateral-action-waiver defense by failing to include it in its response to Burgess's § 2255 motion. Relying on this reasoning, Burgess asserts that the district court erred in raising the collateral-action waiver on its own initiative and then dismissing Claim 5 on that basis.

### B.     The *Day* Line of Cases

But then there's the *Day* line of cases to consider. Despite the fact that we have described § 2255 motions as civil in nature, collateral-review cases such as those involving § 2255 motions have their own peculiarities that render them different in some ways from pure civil proceedings. The Supreme Court delved into these differences and their procedural consequences in *Day*.

*Day* involved a habeas petition filed in federal court under 18 U.S.C. § 2254. 547 U.S. at 201. AEDPA imposes a one-year limitation period for the filing of a federal habeas petition under § 2254, *id.* (citing 28 U.S.C. § 2244(d)(1)(A)), and Rule 5(b), Rules Governing § 2254 Cases ("§ 2254 Rules" or "§ 2254 R."), requires the state in responding to a § 2254 petition to, among other things, "state whether any claim in the petition is barred by . . . a statute of limitations." Heeding this requirement, the state filed its answer to Day's petition and expressly

10

agreed that his petition was timely because it had been "filed after 352 days of untolled time." *Day*, 547 U.S. at 201.

In fact, however, the state had made a mathematical error, and Day had filed his petition after 388 days—beyond the 365-day statutory period. *Id.* at 201-02. The magistrate judge noticed the error and gave Day an opportunity to show cause why the petition should not be dismissed as untimely. *Id.* at 202. When the magistrate judge found Day's response inadequate, the magistrate judge recommended dismissal of Day's petition. *Id.* The district court adopted the magistrate judge's recommendation and dismissed the case. *Id.*

On review, the Supreme Court considered "whether a federal court lacks authority, on its own initiative, to dismiss a habeas petition as untimely, once the State has answered the petition without contesting its timeliness." *Id.* The Court concluded that under the circumstances in Day's case, "the federal court had discretion to correct the State's error and, accordingly, to dismiss the petition as untimely under AEDPA's one-year limitation." Yet the Court was careful to note that a district court would abuse its discretion if it "overr[o]de a State's deliberate waiver of a limitations defense." *Id.*

The Supreme Court rested its ruling on primarily two interrelated rationales. First, the Court stated a preference for treating defenses identified in the same § 2254 Rule similarly. In this respect, it observed that although § 2254 Rule 5(b)

11

requires the state in its answer to a habeas petition to "state whether any claim in the petition is barred by a failure to exhaust state remedies, a procedural bar, non-retroactivity, or a statute of limitations," § 2254 R. 5(b), the Supreme Court has held that federal courts may consider the defenses of exhaustion and nonretroactivity, even if the state has failed to raise those defenses. *Day*, 547 U.S. at 206. And it continued, noting that the United States Circuit Courts "have unanimously held that, in appropriate circumstances, courts, on their own initiative, may raise a petitioner's procedural default . . . ." *Id*. Since courts may on their own raise all other defenses set forth in Rule 5(b), § 2254 Rules, the Court reasoned, it makes sense to treat the only remaining defense in that rule—timeliness—the same way.

Second, and more significantly, the Court opined that like the doctrines of exhaustion, procedural bar, and nonretroactivity, AEDPA's statute of limitations is predicated on "values beyond the concerns of the parties." *Day*, 547 U.S. at 205 (citation and quotation marks omitted). Specifically, the Court explained, "The AEDPA statute of limitation promotes judicial efficiency and conservation of judicial resources, safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court judgments within a reasonable time." *Id.*

Because waiver is a threshold defense like timeliness, exhaustion, procedural bar, and nonretroactivity, the *Day* line of cases may apply to the affirmative defense of a collateral-action waiver. If so, the district court had the authority to raise the waiver itself once the government failed to do so in its response to Burgess's § 2255 motion.

Nevertheless, in *Day*, the Supreme Court concluded that a court's ability to revive a forfeited defense identified in § 2254 Rule 5(b) is not without limits. *Id.* at 202, 210-11. First, if a court contemplates exercising its authority to invoke a forfeited § 2254 Rule 5(b) defense, that court must first give the parties "fair notice and an opportunity to present their positions" concerning whether the court should apply the defense. *Day*, 547 U.S. at 210.

Second, a court may not "override a State's deliberate waiver" of § 2254 Rule 5(b) defenses. *Wood v. Milyard*, 566 U.S. 463, ___, 132 S. Ct. 1826, 1833-34 (2012) (quoting *Day*, 547 U.S. at 202); *see also id.* at 1833 n.5 (clarifying that *Day* "made clear . . . that a federal court has the authority to resurrect only forfeited defenses," not waived ones). Otherwise, the court would violate "the principle of party presentation basic to our adversary system." *Id.* at 1833 (citation omitted).

Third, a court may not rely on a forfeited § 2254 Rule 5(b) defense where the state has "strategically withheld the defense," as opposed to having inadvertently overlooked it. *Day*, 547 U.S. at 211 (quotation marks omitted). And

13

finally, in deciding whether to exercise its authority to apply a forfeited § 2254 Rule 5(b) defense, the court must ensure that "the petitioner is not significantly prejudiced by the delayed focus on the [forfeited defense], and determine whether the interests of justice would be better served by addressing the merits or by dismissing the petition [on the forfeited defense]." *Id.* at 210 (citation and quotation marks omitted).

So even if the *Day* line of cases applies and the district court had the authority to raise the collateral-action waiver on its own initiative, the district court still had to comply with the constraints on its authority before it could dismiss the motion on that basis. In particular, the court first had to give the parties fair notice and a chance to present their positions on the collateral-action-waiver defense, and it had to consider the parties' respective positions. It also had to determine whether any delay in the application of the collateral-action waiver significantly prejudiced Burgess and "whether the interests of justice would be better served by addressing the merits." *Id.* at 210 (citation and quotation marks omitted).

C.     Which line of reasoning applies to the appeal-waiver defense?

We conclude that the rules pertaining to civil cases, not the *Day* line of reasoning, governs whether a district court has the authority to *sua sponte* invoke a collateral-action waiver to dismiss a § 2255 motion. We reach this conclusion for three reasons.

14

*First*, the reasoning underlying the *Day* line of cases does not translate neatly to the context of the appeal-waiver defense.  Beginning with the second and significantly more important basis for *Day*'s conclusion—that AEDPA's statute of limitations accounts for "values beyond the concern of the parties"—we cannot say that a collateral-action waiver implicates such values in the same way or to the same extent that the defenses of timeliness, exhaustion, procedural bar, and nonretroactivity do.

Unlike a collateral-action waiver, which only certain criminal defendants opt to enter into, all prisoners are bound by the statute of limitations and the doctrines of exhaustion, procedural bar, and nonretroactivity.  And that is so because Congress and the Judiciary[6] have determined that the universally applicable rules that the statute of limitations and these doctrines impose represent a proper balancing of society's interests in finality, conservation of judicial resources, and comity (in the case of §2254 petitions), on the one side, and the individual's interest in having his habeas claim heard and society's interest in ensuring that a prisoner has been convicted and sentenced within the bounds of the law, on the other.

---

[6] Congress enacted AEDPA's statute of limitations, and the Judiciary created the doctrines of exhaustion, procedural bar, and nonretroactivity.  *See Day*, 547 U.S. at 214 (Scalia, J., dissenting); 18 U.S.C. § 2244(d).

15

But Congress could not enact legislation, and the Judiciary could not create a judicial rule, requiring all criminal defendants to waive all collateral actions, because that would likely violate the Constitution's restrictions on suspending the right to petition for habeas corpus. U.S. Const. art. I, § 9, cl. 2. Indeed, our Constitution's Suspension Clause reflects the determination that the proper balancing of society's interests in finality, conservation of judicial resources, and comity, against the individual and society's interest in ensuring that a prisoner has been convicted and sentenced within the bounds of the law, *see*, *e.g.*, *Welch v. United States*, __ U.S. __, 136 S. Ct. 1257, 1266 (2016) (discussing in the context of retroactivity doctrine societal interests in convictions and sentences that are "authorized by substantive law"), requires the availability of collateral review in at least some instances. So unlike with the four defenses enumerated in § 2254, a district court's invocation of a collateral-action waiver from a privately negotiated plea agreement does not reflect an institutionally determined judgment that concerns of finality and judicial economy generally outweigh the interests of ensuring that a defendant has been convicted and sentenced within the bounds of the law.

As for the *Day* Court's other basis for its conclusion—that defenses listed in the same habeas rule should be treated in the same way—the application in that case was clear: the statute-of-limitations defense expressly appears in § 2254 Rule

16

5(b) alongside the defenses of non-exhaustion, procedural bar, and nonretroactivity. Here, however, the appeal-waiver defense is mentioned neither expressly nor implicitly in § 2255 Rule 5(b). That rule does require the government to provide information about a movant's use of any other federal remedies and evidentiary hearings—information that could allow a district court to discern the existence of a threshold defense such as a procedural or statutory bar. But § 2255 Rule 5(b) does not purport to put a collateral-appeal-waiver defense on the same footing as, for example, the defenses of statutory and procedural bars. That fact takes us outside the territory of *Day* and likewise removes a reason to treat a collateral-action-waiver defense the same way as a statutory or procedural bar.

*Second*, the usual rule in our party-presentation system requires the parties to invoke their own claims and defenses. As the Supreme Court has explained, "[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). If a court engages in what may be perceived as the bidding of one party by raising claims or defenses on its behalf, the court may cease to appear as a neutral arbiter, and that could be damaging to our system of justice. Abiding by the Federal Rules of Civil Procedure's rules for raising affirmative defenses avoids that problem.

*Third*, the neutral-arbiter concern is particularly apt when the court invokes an affirmative defense on behalf of the government, where the only source of the defense stems from the plea agreement. Federal Rule of Criminal Procedure 11(c)(1) prohibits courts from participating in plea-negotiation discussions. Among other reasons for this rule, courts have explained that it "protects the integrity of the judicial process." *United States v. Casallas*, 59 F.3d 1173, 1178 (11th Cir. 1995), *abrogated on other grounds by United States v. Davila*, __ U.S. __, 133 S. Ct. 2139 (2013) (quoting *United States v. Bruce*, 976 F.2d 552, 557-58 (9th Cir. 1992), *abrogated on other grounds by Davila*, 113 S. Ct. 2139) (quotation marks omitted). Insulating judges from plea-negotiations would hardly protect the judicial process's integrity if courts could later, of their own volition, invoke the government's benefits conferred by the agreement arising from those very negotiations.[7]

---

[7] We do not suggest that a district court's mere mentioning on its own initiative of a plea agreement's collateral-action waiver requires a harmless-error review, as would a district court's participation in plea discussions. *See Davila*, 133 S. Ct. at 2139. The two situations are materially different. When a judge involves herself in plea discussions, a plea agreement may or may not result, and the judge's involvement can seem coercive to a defendant. But after the government and the defendant enter into a plea agreement, a court's reliance on its contents cannot affect whether a plea is entered into in the first place. Rather, we discuss Rule 11(c)(1), Fed. R. Crim. P., for the sole purpose of showing that the court's neutrality is of particular concern when it comes to matters surrounding a plea agreement.

For these reasons, we conclude that the rules applying to civil cases govern here.[8]

## IV.

Nevertheless, under the Federal Rules of Civil Procedure, a district court may entertain a motion to amend the pleadings if the government's initial response to a movant's § 2255 motion failed to invoke an available affirmative defense. *See Day*, 547 U.S. at 216-17 & 217 n.2 (Scalia, J., dissenting); *see also* Fed. R. Civ. P. 15(a).   As Justice Scalia observed, "Requiring the [government] to take the affirmative step of amending its own pleading at least observes the formalities of our adversary system, which is a nontrivial value i[n] itself." *Day*, 547 U.S. at 217 n.2 (Scalia, J., dissenting) (citation omitted).   And once a party seeks to amend its pleadings, the Federal Rules of Civil Procedure instruct district courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).

---

[8] Our concurring colleague opines that "an appeal/collateral challenge waiver by a prisoner is, at least at present, the only affirmative defense to a § 2255 motion that will be deemed forfeitable by a breach of Rule 8(c)." Conc. at 6.   She may or may not be correct. But no other affirmative defenses are currently before us.   So opining on whether they may be forfeitable under Rule 8(c) would require an impermissible advisory opinion. *See Flast v. Cohen*, 392 U.S. 83, 96-97 (1968) (the rule against advisory opinions "recognizes that such suits often are not pressed before the Court with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multifaced situation embracing conflicting and demanding interests.") (citation and internal quotation marks omitted).   For that reason, beyond recognizing the application of the *Day* line of cases to the affirmative defenses specifically addressed in those cases, we do not opine on whether, in the context of collateral claims, any other affirmative defenses are subject to Rule 8(c)'s forfeiture provision.

19

Amendment of pleadings, of course, can slow the judicial process and moot proceedings that have preceded the amendments. In an effort to streamline the proceedings and manage their dockets, district courts may make limited inquiry into litigants' possible claims and defenses, without violating the party-presentation principle that animates our judicial system. Indeed, the Supreme Court has "long recognized that a district court possesses inherent powers that are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Dietz v. Bouldin*, __ U.S. __, 136 S. Ct. 1885, 1891 (2016) (citation and internal quotation marks omitted). So while a district court may not invoke a collateral-action waiver in a plea agreement, in a case where such a waiver exists, the court may ask the government to state whether it intends to rely on the waiver. Of course, if the government decides to do so, the district court must provide the movant with an opportunity to respond and be heard on the issue.

## V.

For the reasons discussed above, we vacate the district court's order denying Burgess's § 2255 motion to the extent that it dismissed Claim 5. We remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED**.

20

JULIE CARNES, Circuit Judge, concurring:

As explained in the majority opinion, this appeal presents a novel question whose answer is not immediately obvious. To recap, a magistrate judge directed the Government to respond to Burgess's § 2255 motion by indicating why the motion should not be granted and by addressing, among other things, the timeliness of the motion and whether Burgess had previously pursued other federal remedies. The question whether Burgess had waived his right to file a § 2255 motion was not something that the court specifically directed the Government to answer. The Government responded, offering multiple reasons why Burgess should not succeed on his motion, but never mentioning that, as part of a plea agreement, Burgess had waived his right to challenge collaterally the effectiveness of his attorney at the sentencing hearing. Thereafter, with the case now before the district court judge following the Government's response, the district judge *sua sponte* denied that part of the motion alleging ineffective counsel at sentencing, but not on the merits as argued by the Government. Instead the court relied on the appeal/collateral-attack waiver that Burgess had agreed to as part of his plea agreement, which waiver prevented Burgess from raising this challenge in a § 2255 motion. And it was on this basis that the district court denied this particular claim.

As the Government had already filed its response and had never mentioned

21

this collateral-attack waiver in that response, the first question presented by this appeal is whether the district court should have given Burgess an opportunity to respond before it dismissed his § 2255 motion based on that waiver. I agree with the majority opinion's conclusion that pursuant to *Day v. McDonough*, 547 U.S. 198 (2006), the district court should have given Burgess that chance. And were that all we had to decide, it would be simple enough to remand the case to the district court to allow Burgess to respond, after which the district court would be free to again deny the claim based on the waiver ground.

But Burgess seeks a broader victory than just getting the chance to respond. Rather, he argues that once the Government had filed a response in which it failed to mention its "affirmative defense" of waiver, then the district court was no longer free to rely on that defense *sua sponte* and the defense was kaput. Accordingly, Burgess contends that the district court on remand will be required to determine this particular claim on its merits. And that is the outcome reached by the majority opinion.

Although I concur with this result on these particular facts, in doing so I acknowledge that it is a close question. In part, I write separately to emphasize the narrowness of today's holding. But mostly I write to emphasize that there is nothing wrong with a judge, in screening the § 2255 case before her, to identify the prisoner's waiver of a right to file a collateral challenge as a potential defense, and

22

to then allow the parties to respond.  Moreover, even when the court has failed to identify this waiver during the initial review period and when the Government has also failed to mention the waiver in its subsequent response, the latter is still free to later request an amendment of its response to permit the district court to consider the defense.

As to the limited impact of our decision, although today's holding rests on the use of a civil procedure rule to determine the outcome in a § 2255 case, I do not foresee, as a general matter, the federal rules of civil procedure assuming an outsized role in a protocol that operates on very different rules.[1]  Why then did a civil procedure rule control here?  As the majority opinion acknowledges, there are special rules to govern § 2255 proceedings, and nothing in those rules requires the Government to assert its affirmative defenses in its response to the prisoner's

---

[1]  As to the very different protocol that governs a § 2255 proceeding versus a civil case, when a traditional civil case is filed, the plaintiff is subject to different pleading requirements than the Rules Governing § 2255 Proceedings require for its movants.  (Compare Fed. R. Civ. P. 8(a) with § 2255 Rule 2(b).)  In a civil case, discovery is mandatory and the required disclosures are set out in great detail, whereas in a § 2255 proceeding, discovery can be conducted only by leave of the court and within the parameters it allows.  (Compare Fed. R. Civ. P. 26 with § 2255 Rule 6).  Further, as discussed *infra,* in § 2255 litigation, the district court is required by rule to take the lead in initially reviewing the case to determine whether there is any potential merit; in traditional civil litigation, the defendant typically shoulders that burden.  Indeed, because some of the federal civil rules are a poor fit for the procedures set out in the special rules that govern § 2255 proceedings, efforts to shoehorn them into the latter can be problematic.  *See. e.g., McBride v. Sharpe*, 25 F.3d 962 at 967, 970 (11th Cir. 1994) (en banc), in which the court held that the 10-day notice requirement found in the summary judgment provision of Fed. R. Civ. P. 56(c) is inconsistent with the summary disposition protocol established by the Rules Governing § 2254 Cases, Rule 8(a), when the parties do not raise issues requiring a factual inquiry outside the record and the court does not rely on materials outside that record.

motion. Indeed, § 2255 Rule 5 provides that the Government is not even required to respond to the motion unless a judge requires it to do so, and when a response is required, the rule requires only that the answer "address the allegations in the motion," "state whether the moving party has used any other federal remedies," and "whether the moving party received an evidentiary hearing." Rules Governing § 2255 Rule 5. The federal civil procedure rules factor in only because of § 2255 Rule 12, which provides that "The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules." Thus, but for Fed. R. Civ. P. 8(c), which requires an affirmative defense such as waiver to be asserted in any response to a pleading, Burgess would lack any support for an argument that the Government had forfeited its ability to rely on Burgess's waiver of the right to challenge collaterally his sentence. Yet, because Rule 8 (c)'s requirement that a defendant assert an affirmative defense is not inconsistent with the § 2255 Rules' silence on that point, in theory it should it apply.

But "theory" is the operative word because, as *Day* sets out, even a violation of Fed. R. Civ. P. 8(c) can be insufficient to assure victory for a prisoner seeking to collaterally attack his conviction or sentence in federal court. As the majority opinion explains, the Supreme Court held in *Day* that even when a state authority

24

has failed to assert in its response certain affirmative defenses—specifically, exhaustion of remedies, procedural default, non-retroactivity of new decision, and statute of limitations—available against a § 2254 claim,[2] Fed. R. Civ. P. 8(c) does not operate to render these defenses forfeited by the respondent. Instead, the reviewing district court may still, within certain parameters, assert the affirmative defense on behalf of the State and rely on it in denying the petition. *See Day*, 547 U.S. at 205, 208–09. Thus, as to all of the above affirmative defenses, even a Rule 8(c) violation by a state or federal respondent will not, by itself, insulate the prisoner from dismissal based on those defenses. But, as also noted by the majority opinion, the Supreme Court indicated that it was only because the nature of these particular defenses were predicated on "values beyond the concerns of the parties" that the Court recognized an exemption from what would normally be Rule 8(c)'s prohibition of a district court's *sua sponte* reliance on a defense that the respondent had omitted from its response.

The novel question before us in this case is whether a post-response, *sua sponte* judicial enforcement of a plea agreement provision waiving a right to collaterally attack a sentence serves to protect the same sort of institutional values as does a court's enforcement of the affirmative defenses of timeliness, exhaustion

---

[2] 28 U.S.C. § 2254 permits a state prisoner to collaterally challenge a state conviction in federal court. 28 U.S.C. § 2255 governs the collateral challenge to a federal conviction.

of remedies, procedural default, and non-retroactivity.  If it does, then, just as with those other affirmative defenses, Fed. R. Civ. P.  8(c) would not stand in the way of a district court *sua sponte* relying on the defense, even though the Government failed to assert it in its response. On this point, I agree with the majority that it is mostly the concern of the parties, not the court, that such a plea agreement provision be enforced, and it therefore makes sense to expect the party who would benefit from enforcement to mention that concern either in pursuing or opposing relief.  And I therefore concur that a *sua sponte,* post-response dismissal based on a collateral-attack waiver does not enjoy the protection from application of Rule 8(c) that *Day* extends to other affirmative defenses.  I also observe, however that taking *Day* together with our ruling in this case, it appears that an appeal/collateral challenge waiver by a prisoner is, at least at present, the only affirmative defense to a § 2255 motion that will be deemed forfeitable by a breach of Rule 8(c).  That only one affirmative defense associated with a § 2255 motion appears to be categorically precluded by a federal civil procedure rule that purportedly deems as forfeited any affirmative defense not raised in a respondent's response illustrates the narrowness of our ruling.

Moreover, I do not read our opinion today as in any way constraining the ability of a district court to *sua sponte* raise the issue of the plea waiver when it is setting out the issues in the case that it wishes the parties to address and develop.

One of the most important distinctions between the federal civil procedure rules and the rules governing § 2255 litigation lies in the very different role that the district court occupies in each proceeding. In a civil case, the defendant typically takes the lead in seeking dismissal of the case or a narrowing of the issue. *See, e.g.*, Fed. R. Civ. P. 12(b), 12(c), 12(e), 12(f). With a § 2255 motion, however, the special rules vest in the district court the duty and responsibility to initially assess the case to determine whether there is sufficient merit to permit it to move forward. Specifically, § 2255 Rule 4 (Preliminary Review) requires that the clerk forward a § 2255 motion to the judge who tried the underlying criminal trial. Section 2255 Rule 4(a) (Initial consideration by judge) requires the judge to promptly examine the motion and "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge <u>must</u> dismiss the motion . . . ." § 2255 Rule 4(b) (emphasis added). If the court does not dismiss the motion, it must then direct the Government to respond or to take other action directed by the court. *Id.* In short, § 2255 litigation can go nowhere until the district court first reviews the prisoner's motion and determines that it can proceed: a process that is quite at odds with the way in which traditional civil litigation operates.[3]

---

[3] Under the Federal Rules of Civil Procedure, upon service of the complaint, the defendant is required either to file an answer (Rule 12(a)(1)(A)), a motion to dismiss (Rule 12(b)), or a motion for a more definite statement (Rule 12(f)). Obviously, the defendant in civil

27

And because it is the district court's responsibility to initially assess and then direct and manage the § 2255 litigation, I do not read our opinion as in any way gagging the court as it goes about that endeavor.  Further, even when the district court, via its initial review, does not identify an appeal waiver as a matter for the Government to address in its response—and the Government then fails to raise that defense—our opinion today not mean that the Government cannot subsequently file a motion pursuant to Fed. R. Civ. P. 15(a) to amend its response to add that defense.[4]  To that point, although affirming the district court's action in *Day*,[5] the Supreme Court noted that instead of *sua sponte* issuing to the petitioner a show cause order to explain why the petition was not untimely, the district court could have informed the State of the timeliness issue and entertained any subsequent motion by the State to amend its answer.  *Day*, 547 U.S. at 209.  As the Court noted, "Recognizing that an amendment to the State's answer might have obviated this controversy, we see no dispositive difference between that route, and the one

litigation is not permitted to wait until the district court assesses the merits of the complaint before launching its opening salvo.

[4]  This avenue is not open to the Government in this case, though, because after it responded, the Government never filed a motion to amend to assert the waiver defense.  In short, on remand, the district court will be required to decide Burgess's collateral attack on his sentence on the merits.

[5]  In *Day*, the state respondent had erroneously indicated in its response that the § 2254 petition was timely, based on an erroneous mathematical calculation that was obvious to the magistrate judge who had been newly assigned to the case.  Taking notice of this error, the magistrate judge *sua sponte* directed the § 2254 petitioner to show cause why the petition should not be dismissed as untimely.

28

taken here." *Id.* (footnote omitted). Indeed, notwithstanding the dissent's disagreement that the district court was empowered to issue a *sua sponte* ruling based on an affirmative defense not raised by the Government in its response, the majority opinion in *Day* noted the Court's unanimity on the above point. *Id.* at 209 n.9. The dissent confirmed its agreement that a post-response motion to amend by the State, after being informed by the Court of the timeliness issue, would handle its concerns and would be appropriate:

> I agree with the Court that today's decision will have little impact on the outcome of district court proceedings. In particular, I agree that "if a district judge does detect a clear computation error, no Rule, statute, or constitutional provision commands the judge to suppress that knowledge," *ante,* at [210]. Rather, a judge may call the timeliness issue to the State's attention and invite a motion to amend the pleadings under Civil Rule 15(a), under which "leave shall be freely given when justice to requires." In fact, in providing for leave whenever "justice so requires," Rule 15(a), the Civil Rules fully accommodate the comity and finality interests that the Court thinks require a departure from the Civil Rules . . . Requiring the State to take the affirmative step of amending its own pleading at least observes the formalities of our adversary system, which is a nontrivial value in itself . . . .

*Day*, 547 U.S. at 216 n.2 (Scalia, J., dissenting) (emphasis added).

In summary, the following is how I read the majority opinion and the basis on which I concur. During its preliminary review and before any response is filed by the Government, a district court may raise *sua sponte* a collateral-attack waiver and direct the parties to respond. *Day*, 547 U.S. at 210. If the district court has failed to instruct the Government to address the collateral-attack waiver, it is the

29

Government's responsibility to assert this particular affirmative defense in its response. If, however, it fails to do so initially, the Government may nonetheless later file a motion pursuant to Fed. R. Civ. P. 15(a) to amend its response to add this waiver defense. In deciding whether it will allow the Government to belatedly raise this affirmative defense, the district court will apply the standards traditionally used to decide such a motion.

With these points of emphasis, I concur in the majority opinion.